[No. 9909.  Department Two.  February 20, 1912.]

THE CITY OF SEATTLE, *Respondent*, v. LYMAN HINCKLEY
et al., *Appellants*.[1]

DEDICATION—BY ESTOPPEL AND USER—EVIDENCE — SUFFICIENCY —
IMPLIED ACCEPTANCE.  A dedication of a city street by estoppel and
user is shown where it appears that the owner removed his fences
from a strip thirty feet wide, stating that he was throwing it open
to the public, in 1889, and deeded the same to the city in 1892, a
sidewalk was constructed thereon, the street used by the public for
twenty years, and referred to in partition deeds of the heirs as
Galer street, and used as a boundary line; the long continued use
by the public implying an acceptance by the city, although the deed
was lost and the street was not worked.

ADVERSE POSSESSION — STREETS — PRESCRIPTION.  Open, notorious,
continuous and adverse use by the public of a strip of land thirty
feet wide, generally known and used as a thoroughfare, negatives
permissive use, and constitutes the same a street by prescription
independently of dedication.

MUNICIPAL CORPORATIONS—STREETS—DEDICATION—ESTOPPEL— PAY-
MENT OF TAXES.  The payment of taxes and local assessments upon
a strip of land used adversely as a street, for the prescriptive period,
under a dedication by estoppel and user, does not estop the city
from claiming the same as a street by dedication and prescription.

SAME—ESTOPPEL—COURT PROCEEDINGS—VACATION OF STREETS.  Nor
would the city be estopped by the fact that the city attorney, out of
an excess of caution, included a portion of the strip in condemna-
tion proceedings for the widening of streets, where the claimants
in no wise altered their position by reason of the condemnations;
especially in view of Rem. & Bal. Code, § 7840, providing an exclu-
sive method for the vacation of streets.

Appeal from a judgment of the superior court for King
county, Arthur E. Griffin, Esq., judge *pro tempore*, entered
September 12, 1911, upon findings in favor of the plaintiff,
in an action to quiet title.   Affirmed.

*Peterson & Macbride*, for appellants.
*Scott Calhoun* and *Howard M. Findley*, for respondent.

[1]Reported in 121 Pac. 444.

ELLIS, J.—This action was brought by the city of Seattle to quiet title to a strip of land thirty feet wide, known as "Galer street," being the north thirty feet of lot 1, section 30, township 25, north, range 4, E. W. M. The complaint alleges that, for the past twenty years, this strip has been openly, continuously, adversely and uninterruptedly used and occupied, under a claim of right, as a public street by the city, its inhabitants and the public generally. These allegations were traversed by the answer, which also sets up matter in estoppel against the city. Upon the issues so framed, the cause was tried to the court and a decree entered establishing the right of the city to the strip in question for street purposes, whereupon this appeal was taken by the defendants.

The evidence introduced by the respondent city shows, that one T. D. Hinckley, father of the appellant Lyman Hinckley, prior to 1889, owned a tract of land including this strip; that in 1889 or 1890 he removed his fence from the strip and stated at the time that he was throwing it open to the public; that ever since that time fences have been maintained on both sides of the strip; that in July, 1889, the Union Water Company purchased from T. D. Hinckley and wife a strip of land 53 feet wide, south of and adjoining the strip in question, and afterwards erected a pumping station thereon and laid its water pipes in the Galer street strip here in question, claiming the right to do so by license from the city and without either permission or objection, but by mere acquiescence, so far as the record shows, on the part of T. D. Hinckley; that sometime prior to 1892, T. D. Hinckley and wife deeded the thirty-foot strip in question to the city for use as a public street; that soon after the strip was thrown open, a sidewalk was built along the south side thereof, apparently by Hinckley and the water company, and that the strip has ever since been known as Galer street, and has ever since been used by the public as a street and thoroughfare, very largely by pedestrians and to a considerable extent by

teams; that the street was never graded or improved by the city, but there was some evidence tending to show that the sidewalk had been repaired by workmen in the city's employ. While there was no evidence that the city ever accepted the conveyance of this strip from T. D. Hinckley and wife, and the deed was never recorded, the admission that the deed was made is strong evidence of an intention on their part to dedicate the strip for use as a public street when it was thrown open. The evidence also shows that, on March 25, 1909, after the death of T. D. Hinckley, partition deeds of the land owned by him were made between his widow and children, among them the appellant Lyman Hinckley; that these deeds referred to this strip as Galer street, and the descriptions therein were made with reference to it as a boundary line of the land partitioned, and that the south line of this strip was designated in the deed to Lyman Hinckley as the south line of Galer street and the north line of the tract deeded to him. This Galer street strip was not included in the decree of distribution of the T. D. Hinckley estate, nor in any of the partition deeds. The strip of land here in question extends from Dexter avenue on the west to Westlake avenue on the east.

We are of the opinion that this evidence amply established a dedication of this strip of land to the public for use as a street by T. D. Hinckley and wife.

"In making a dedication, no particular formalities are necessary. The statute of frauds is not applicable in such cases, and therefore a deed or other instrument of writing is not necessary, though, of course, a dedication may be made by deed. The intention to make a dedication may be shown by particular acts of the owner, such as throwing open his land to public travel, or platting it and selling lots with reference to the plat, or acquiescing in or positively assenting to its use by the public, or, in short, by any act positively and unequivocally indicating such intention." *Seattle v. Hill*, 23 Wash. 92, 62 Pac. 446.

See, also, 13 Cyc. 473; 1 Elliott, Roads and Streets (3d ed.), §§ 137, 175; 3 Dillon, Municipal Corporations (5th ed.), § 1079; *Barclay v. Howell's Lessee*, 6 Pet. 498.

The evidence also shows a recognition of the dedication, and of the public right in the land dedicated, by the widow and heirs of T. D. Hinckley, including the appellant Lyman Hinckley. Their deeds given and received in partition recognize the strip as Galer street, and refer to its south line as a boundary of the land partitioned. *Moses v. St. Louis Sectional Dock Co.*, 84 Mo. 242; *Buschmann v. St. Louis*, 121 Mo. 523, 26 S. W. 687. We are also of the opinion that the evidence shows such a general and long continued use by the public as to imply an acceptance of the dedication. That such an acceptance is sufficient without any formal act on the part of the city officials is sustained by both reason and authority.

"The 'town, county or parish,' using Professor Greenleaf's terms, is represented by the town, county or parish officers, but the officers are not the corporation. The municipal corporation consists of the inhabitants and not the officers; the officers are, in truth, nothing more than the agents of the corporation. The inhabitants, therefore, stand to the officers as principals, and if the principals have, by their conduct, accepted the dedication, it is of no great importance that the agents have taken no action in the matter. The inhabitants of a locality having by long continued use treated the way as a public one, they make it such without the intervention of those who derive their authority from them. Creating towns, cities, and other public corporations, is 'but the investing the people of the locality with the government thereof,' and they may themselves exercise the powers of government of highways quite as effectually by continued use as by any other method." 1 Elliott, Roads and Streets (3d ed.), p. 193, § 170.

See, also, 3 Dillon, Municipal Corporations (5th ed.), § 1086; 13 Cyc. 465.

"A dedication and acceptance may be implied from a general and long-continued use by the public as of right." *Spencer v. Arlington*, 49 Wash. 121, 94 Pac. 904.

In any event, this strip had become a public street by prescription independently of dedication. It had been used by

the public generally as a street, and generally known as Galer street, for a period of twenty years. During all, or practically all, of that period, its boundaries were clearly defined by fences. The use was open, notorious, continuous and adverse. There is nothing in the record to indicate a merely permissive use. The fact that this strip of land was known generally as Galer street and used continuously as a thoroughfare negatives a merely permissive use by the public. Every element of right by adverse possession is present. *Seattle v. Smithers*, 37 Wash. 119, 79 Pac. 615; *Scheller v. Pierce County*, 55 Wash. 298, 104 Pac. 277; *Smith v. Mitchell*, 21 Wash. 536, 58 Pac. 667, 75 Am. St. 858; *Chicago v. Wright*, 69 Ill. 318.                    .

It only remains to consider the claim of estoppel made by the appellants. This claim is based mainly upon the payment of taxes by the appellants, and those from whom they deraign title. According to the decided weight of authority, this is not sufficient to estop the city from claiming the strip in dispute as a public street. The right of the public to use the land as a street established by a continuous and uninterrupted use cannot be admitted away by the taxing officers.

"The rights of the public in a highway are not affected by the listing of the premises for taxes, or payment of taxes when assessed. It is not within the province of assessing or collecting officers to thus admit away the rights of the public." *Campau v. Detroit*, 104 Mich. 560, 62 N. W. 718.

"The payment of taxes assessed by the local authorities is evidence tending to defeat the presumption of a dedication. Elliott, Roads & S. p. 131; *Waggeman v. Village of North Peoria, supra*. It is, however, under most circumstances, a matter of but small probative force; and, if the land is in fact dedicated to the public for a highway, the fact that it has been taxed will not prevent the public from claiming the use of such land for a public road." *Ottawa v. Yentzer*, 160 Ill. 509, 43 N. E. 601.

See, also, *Buschmann v. St. Louis*, and *Chicago v. Wright, supra; Lemon v. Hayden*, 13 Wis. 177; 1 Elliott, Roads and

Streets (3d ed.), § 198; *West Seattle v. West Seattle Land & Imp. Co.,* 38 Wash. 359, 80 Pac. 549.

The same reasons apply to the further claim of appellants that the city was estopped to assert a right to this strip as a street by including it in a local assessment district and bringing an action in 1892 to foreclose an assessment thereon. The assessing officers could not thus admit away the public right then, and until now, exercised by a continuous and uninterrupted use.

It is also urged that the city is estopped by condemning a width of seven feet from the west end of this strip in widening Dexter avenue, and by condemning a part of the east end of this strip in widening Westlake avenue. The evidence as to these condemnations indicates that the assistant corporation counsel who represented the city therein then claimed that the city owned this strip, but in order to avoid any question as to the title to the widened streets, Dexter and Westlake avenues, which were being widened for immediate improvement, he included small parts of the thirty-foot strip in the condemnation, with other lands condemned admittedly belonging to the Hinckleys. This was evidently done out of an abundance of caution. The essential elements of estoppel are lacking. The act of condemning and paying for these parts of the strip in question did not tend to place the Hinckleys in a worse position than they otherwise would have been. There is no evidence that, acting upon the faith of a relinquishment by the city which it is claimed these condemnations showed, they expended any money or incurred any obligation that they would not otherwise have expended or incurred. They have, by reason of these condemnations, in nowise altered their position for the worse. Moreover, it was not within the power of the city officials to thus vacate a public highway however acquired.

"It is, also, contended by respondents that inasmuch as the city included within the ordinance of August 6, 1864, and the proceedings to condemn had thereunder, the property before

dedicated, that the city is now estopped from asserting a claim under the prior dedication, and this too, though the property has at all times since 1859 been treated by all parties as a part of the wharf. Such results, we think, do not follow. We do not see how it is within the power of the city officials to thus vacate a public highway." *Moses v. St. Louis Sectional Dock Co., supra.*

This is especially true under the provisions of the statute of this state relative to the vacation of streets. Rem. & Bal. Code, § 7840, prescribes the manner in which streets or alleys may be vacated. We have repeatedly held that this statutory method of vacation is exclusive. *Heuston v. Tacoma, ante* p. 92, 120 Pac. 872; *Smith v. Centralia,* 55 Wash. 573, 104 Pac. 797.

While we do not hold that the abandonment of a street may not be asserted against a city where the acts of the city have been such that equity and good conscience would prevent a claim of the city to the contrary, and where persons acting upon the good faith of such acts have, with full acquiescence by the public, expended money in improvements upon the land, in an honest belief that it was not claimed as a street, we do hold that no such case is presented here.

The judgment is affirmed.

DUNBAR, C. J., CHADWICK, CROW, and MORRIS, JJ., concur.