No. 11,474.

HECKER v. CITY AND COUNTY OF DENVER.

Decided January 3, 1927.

Action to quiet title. Judgment for plaintiff.

*Affirmed.*

1.  HIGHWAYS—*Streets*—*Prescription.* Where a street had been maintained as a highway and continuously and uninterruptedly used and traveled by the general public for 30 years, it is held that a prescriptive right thereto was established.

2.  EVIDENCE—*Quieting Title.* In an action to quiet title, evidence of a former owner of the land that he had recognized that he was estopped to assert ownership to a tract thereof that had been used as a highway for a number of years, held admissible.

3.  DEDICATION—*Common Law.*  In an action to quiet title, under the facts disclosed it is held there was a common-law dedication of land used for a public highway.

4.  MUNICIPAL CORPORATIONS—*Easement for Street—Taxation.*  A municipal corporation is not estopped to claim an easement over land for a highway, on the ground that it assessed and collected taxes on the tract.

5.  PLEADING—*Amendment—Verification—Waiver.*  If there was error in permitting an amendment to an answer to be made by interlineation and without reverification, it was waived by failure of plaintiff to object thereto on that ground, and by joining issue in the replication.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. JOSHUA GROZIER, for plaintiff in error.

Mr. HENRY E. MAY, Mr. MILNOR E. GLEAVES, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

PLAINTIFF Hecker brought this action against the City and County of Denver to quiet her title to two city lots. The answer has twelve separate defenses including a general denial.  The decree of the court is that the plaintiff owns the fee and the defendant city has an easement and a right of way over the entire width and length of the lots for street and highway purposes.  Plaintiff brings error.  The decree apparently is based upon the defense of the answer that alleges that the lots in question are, and for more than twenty years have been, part of a public street of the city, and of its predecessor, known as Mexico street and, as such, part of the main traveled state and interstate highway extending from

Wyoming on the north to New Mexico on the south and passing through the city of Denver. The finding of facts by the court is general and it is broad enough to cover this particular defense and some other defenses of the answer. There are nine separate assignments of error, some of which contain many subdivisions. Diligent counsel for plaintiff in error has elaborately discussed numerous international and constitutional questions, federal and state, and has crammed into his briefs a multitude of American and English cases upon a variety of legal subjects. His abstract of the record, 110 pages, is so interlarded with argument and comment upon the weight and sufficiency of the testimony and various alleged irregularities and errors of the trial court, some of which are not included in the assignments of error, as to confuse what an abstract is designed to clarify. Were it not for the supplemental abstract of the defendant in error, consisting of 99 pages, it would be difficult to ascertain what questions were litigated and what were actually determined.

Assuming with plaintiff in error, but not so deciding, that she had the requisite possession of the premises when her complaint was filed, and that the many authorities she cites state the applicable principles of law to the cases in hand, we are unable after repeated readings to discover their pertinency to what the trial court below correctly determined to be the controlling question in the case. That the findings and decree are right and must stand, we have no doubt. The essential facts, in substance, are that in 1889 the owner of a tract of land in what was then the town of South Denver (which was annexed to the city of Denver in 1894) laid out the same or a part thereof into blocks and lots as the Overland Park subdivision and made a plat thereof and filed it in the recorder's office. On this plat and as part thereof is block C containing 42 lots, numbered 1 to 42

consecutively. The subdivision lies between the Santa
Fe Railroad right of way on the west and South Four-
teenth street, now called Bannock street, on the east.
(See Plate 1, Exhibit J.)

The lots, except those numbered 25 and 26, the ones in
controversy here, are 25 feet in width. Each of these
two lots is 30 feet wide, the combined width of 60 feet
being the width of Mexico street, which is shown on the
plat. These lots exactly conform lengthwise east and
west to the lineal course of the street and the external

lines thereof both east and west. The plat on its face does not show that Mexico street extends farther west than the east line of block C, but the fact is clearly established by the evidence that at the time when the map was filed, and long before, Mexico street had been and still was uninterruptedly traveled and used as a highway by the public, not only to the east and west of this block but directly over and across lots 25 and 26 thereof as one continuous line of travel 60 feet wide. This difference in the width of the two lots, apparently making them 60 feet wide to conform to the width and course of Mexico street, while each of the other lots in the block is only 25 feet wide, is at least some indication of a recognition by the owner of the existence of a highway across this 60 feet strip. But there are stronger reasons in support of the decree. For many years, at least thirty, before this suit was brought, Mexico street had been, as already stated, continuously and uninterruptedly traveled and used by the public as a highway, and the same extended over and included as a part of such highway what is designated on this plat as lots 25 and 26 and maintained by the public authorities as such. The fee of the lots, as the court found, is undoubtedly in the plaintiff, but under the evidence the easement as a highway over and across them is in the defendant. We shall make no attempt to summarize the large volume of evidence. It is sufficient to say that the decree may be vindicated upon either, or both, of two unassailable grounds each of which is set up as a separate defense in the answer. The evidence clearly discloses all the elements of title by prescription. There was also a common-law dedication. For a period running back beyond the memory of any of the witnesses who testified, certainly for at least thirty years, Mexico street, including what has been platted as lots 25 and 26 of block C, has been continuously and uninterruptedly used and traveled by the general public. The city has maintained it as a public

highway the same as it has maintained and cared for other streets in this vicinity. There seems to be no doubt that a prescriptive right has been established. *Goerke v. Manitou,* 25 Colo. App. 482, 491, 139 Pac. 1049; *Dunbar v. Kohler,* 66 Colo. 272, 180 Pac. 739; *Olson v. People,* 56 Colo. 199, 138 Pac. 21; 1 Elliott on Roads and Streets (3d Ed.) secs. 188 to 201, etc.; 3 Dillion on Municipal Corp. (5th Ed.) secs. 1079 et seq.

The trial court also properly found a common-law dedication which operates not as a grant, but by way of estoppel. While all of block C was owned by a private corporation, The Plattner Implement Company, a number of years before plaintiff's title was acquired, and while taxes were being assessed en masse on block C by the public authorities and paid by the owner, the president of this corporation, and under its authority, acknowledged and recognized the existence of Mexico street as a public highway across these two lots in question and expressly consented to such further use by the public. This recognition and consent may have been partly due to the permission given by the city authorities to the private corporation to use a part of what had been Colorado street, one block south of Mexico, for building purposes, but the president in his testimony makes it clear that he was advised by his counsel, and so believed and recognized, that the uninterrupted use of Mexico street as a highway across these lots for such a long period of time operated as an estoppel against the owner of the fee to assert otherwise. That such testimony by a former owner of the premises is admissible in a suit like this is beyond question. Then, too, the plaintiff herself, before she acquired title to the fee of these lots, knew of the existence of Mexico street and that it passed across these lots to the extent of their entire width and length, and she herself had traveled over the same as a public highway. The city has maintained for many years this street as one of its highways. Poles for

electric and other wires on either side of Mexico street, where it utilizes these two lots, are in alignment with the poles on adjoining portions of the street.   Plaintiff is not an innocent purchaser.  She is charged with notice of a public easement over the lots of which she acquired the fee.  Our conclusion is justified by the evidence in the case, taken in connection with our statutory definition of a highway.   That this highway, both by prescription and as a result of a common-law dedication, constitutes an easement over the premises in question is beyond dispute.

But plaintiff's counsel says that the defendant is estopped to claim an easement by the assessment and collection of taxes by the public taxing officers upon lots 25 and 26, as lots, from the time the subdivision was laid out until the present time, or, at least, up to the time of the beginning of the action.  If, as the trial court well said, the defendant was here claiming a fee, the estoppel might be asserted; but as only an easement is claimed the tax upon these lots, while it might be attacked as excessive, may not be asserted as an estoppel of the city to claim an easement.   In two well-considered opinions of this court (*City of Denver v. Clements,* 3 Colo. 472, and upon rehearing of the case in the same volume, at page 484), the contention of the plaintiff that the city is estopped to assert the easement is answered in the negative.  If other authorities are needed they may be found in: *Starr v. People,* 17 Colo. 458, 30 Pac. 64; 1 Elliott on Roads and Streets (3d Ed.) c. 5, secs. 123, 178-185; 18 C. J. p. 54, sec. 35 et seq.

A further contention of the plaintiff is that the twelfth defense of the answer, which she says is supposed to plead a prescriptive and common-law dedication and which was inserted by interlineation in the verified answer, was, itself, not verified as the law requires and, therefore, no such issue as prescription and common-law dedication was tendered.   So far as we can discover from this record no such objection was made at the time

the court allowed the amendment to be made. Moreover, after the plaintiff's objection to the filing of the amendment was overruled, she filed a replication joining issue upon the same by denying its allegations. If there was error in allowing the amendment to be made by way of interlineation in the answer, or upon the ground that it was not verified, it was waived by the failure of the plaintiff to object thereto on that ground and by joining issue in the replication.

Just why such expensive litigation should be had over these lots, which are of a trifling value, we do not know. Our inquiry is limited to an investigation of the record and to an examination of the assignments of error. We have not specifically considered all the matters discussed or suggested by plaintiff's counsel. Our resolution of the questions as to prescription and common-law dedication are so conclusive as to defendant's easement over these lots, that whatever might be the decision as to the other numerous questions argued by plaintiff, an affirmance of the decree on the merits is inescapable. Judgment affirmed. In taxing costs the clerk will include as part thereof the expense to the defendant of printing the supplemental abstract.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE WHITFORD not participating.