[No. 28043. *En Banc.* October 17, 1941.]

CONSOLIDATED FREIGHT LINES, INC., *Respondent,* v.
HENRY GROENEN *et al., Appellants,* SPOKANE
COUNTY *et al., Respondents.*[1]

[1] Reported in 117 P. (2d) 966.

*E. A. Cornelius,* for appellants.

*James A. Brown,* for respondent Consolidated Freight Lines, Inc.

*Carl C. Quackenbush, Harvey Erickson,* and *Edward J. Lehan,* for respondent Spokane county.

DRIVER, J.—In 1935, the Consolidated Freight Lines, Inc., acquired, as a freight depot site, lots 7 to 11, inclusive, in the south half of block 9 of Nosler's Addition to the city of Spokane. Lots 9, 10, and 11 were purchased from Spokane county. All the lots were unimproved, and, so far as a visual ground inspection would disclose, appeared to be full-sized, but 10 and 11 were, in fact, fractional in the sense that they did not extend all the way from the south line of the block to the graded east-west alley running through the center. This was due to the interposition of a small unplatted tract, a portion of what had formerly been a shallow lake or tule bed, which had passed to Spokane county many years before by the foreclosure of a tax lien. In the pleadings and in the testimony at the trial in the instant case, this tract was called the Hawkeye lake parcel. It will be designated by that name throughout this opinion also.

A map of Nosler's addition in a plat book in the county auditor's office showed the location of Hawkeye lake. At the time it purchased the lots, the freight company procured a policy of title insurance, and, on a map attached thereto, the position of the Hawkeye lake

parcel was indicated and the common boundary line between it and lots 10 and 11 was delineated.

In the early part of 1935, the company built a one-story concrete and brick freight depot at a cost of about fifty-five thousand dollars, and, under the erroneous assumption that its lots were full sized, so placed the building that approximately nine per cent of. its area encroached upon the Hawkeye lake parcel.

In 1939, the land agent of Spokane county received a request to put the parcel up for sale. An investigation revealed that it was covered by a portion of the freight company's depot, and the county commissioners promptly notified the company of that fact. The parcel was then advertised for sale in accordance with the statutory requirements, and, on the appointed day, was sold at public auction to Henry Groenen, the highest bidder, for one thousand dollars. The company's attorney attended the sale and offered a bid of six hundred dollars. Shortly thereafter, the freight company, as plaintiff, brought the present action to quiet title to the Hawkeye lake parcel, naming as defendants the purchaser and his wife, Spokane county, and the city of Spokane. The defendants Groenen answered, denying that the plaintiff owned either the parcel or the improvements thereon, and affirmatively asserted their own title based upon their purchase at the county's sale. The county and the city disclaimed any interest in the property.

After a trial without a jury, the court found that Groenen and wife were the owners of the land, and that the freight company was entitled to the improvements thereon. Judgment was entered granting plaintiff relief in accordance with the provisions of the betterment statute, Laws of 1903, chapter 137, p. 262 (Rem. Rev. Stat., § 797 [P. C. § 7523] et seq.). The defendants Groenen appealed.

For convenience, we shall refer to Henry Groenen as if he were the only appellant and to the Consolidated Freight Lines, Inc., as if it were the only respondent.

The oral memorandum opinion of the trial court discloses that its judgment was based upon two separate grounds: (1) That Spokane county and, hence, appellant, its grantee, were estopped to claim title to the improvements upon the Hawkeye lake parcel; and (2) that the respondent was entitled to invoke the betterment statute above cited. The appellant's assignments of error, in effect, challenge the soundness of both these grounds of decision, and we shall discuss them in the order stated.

Before doing so, however, we think it may clarify the issues to consider a phase of the case which respondent has heavily stressed in its brief and that seems also to have profoundly impressed the trial court; namely, the motive which induced the appellant to purchase the real property in controversy. In its memorandum opinion, the court said:

"Now, in some way Mr. Groenen got information that that was the true situation, because there is no evidence to show that he had any other object in buying it than to speculate at the expense of the consolidated company. He and those that operated with him, or had to do with the matter, knew that this building was there. They knew it was an expensive building. They knew it would be a tremendous inconvenience and loss to this company to be deprived of it, and they felt that by getting title to the land they could then hold up the company for a good stiff price by way of compromise or settlement."

However reprehensible the appellant's actuating purpose may have been from a moral standpoint, we fail to see how it has any material bearing on the issues in this case. Ordinarily, in the absence of fraud, the courts are not concerned with the motive which impels

a person to make a lawful purchase of property. Here, the appellant's purchase was neither fraudulent nor unlawful. It was not made surreptitiously, but openly at the county's public auction of lands acquired for delinquent taxes, which sale was held pursuant to statutory mandate. The sale was consummated after free, competitive bidding in which the respondent participated.

The respondent, in its brief, quotes from the opinion in *Edwards v. Allouez Mining Co.*, 38 Mich. 46, 31 Am. Rep. 301, to the effect that, when a person comes into a court of equity demanding more than the strict rules of law can give him, the court may scrutinize his motive in order to ascertain how he came to be placed in such a situation. In that case, a man purchased a tract of land on which a mining company, by the operation of a stamp mill, had caused sand to be deposited, and then brought suit to enjoin it from continuing such operation. The court denied injunctive relief and commented on the plaintiff's motive in making the purchase. But the complainant did not claim that the mining company was insolvent, and the court concluded that, under the circumstances, "The elements of irreparable injury are entirely wanting to his [complainant's] case." The quoted statement is not apt, and the case in which it was made is factually distinguishable. Here, the appellant was not seeking injunctive or other equitable relief in the lower court. He was the defending, rather than the moving, party; and even his defense was a legal one, namely, that he had legal title to the real property in dispute by virtue of his purchase and deed from the county. In this case, we think, the record facts should be viewed objectively and the appellant's intent or motive should not be considered.

The first, or estoppel, ground of decision of the

trial court has two aspects. The first is that Spokane county and its successor, the appellant, are estopped to claim the improvements on the Hawkeye lake parcel, because the county stood by and permitted them to be made without offering any protest.

The principle of estoppel by silence or implied acquiescence was recognized by this court in *Harms v. O'Connell Lumber Co.,* 181 Wash. 696, 44 P. (2d) 785. There, a lumber company had purchased standing timber on terms which allowed a reasonable time in which to cut and remove it. We held that the owner of the land, who had permitted the company to expend a large sum to build a spur track for use in logging off the timber, was estopped to assert that the right to remove it had been lost by lapse of time. In that case, however, it should be noted that the land owner had actual knowledge that the lumber company was building the spur track for the purpose of removing the timber.

Estoppel by silence does not arise without full knowledge of the facts, and a duty to speak on the part of the person against whom it is claimed. *Blanck v. Pioneer Mining Co.,* 93 Wash. 26, 159 Pac. 1077; *Proctor v. Appleby,* 110 Wash. 403, 188 Pac. 481; *Harms v. O'Connell Lumber Co., supra;* 21 C. J. 1152, Estoppel, § 155 b (1); 2 Pomeroy's Equity Jurisprudence (4th ed.), 1680, § 818.

In the *Blanck* case just cited, Judge Ellis, speaking for the court, concisely stated the limitations of this type of estoppel as follows:

"Full knowledge of the facts is essential to create an estoppel by silence or acquiescence [citing cases]. . . . Mere silence, without positive acts, to effect an estoppel must have operated as a fraud, must have been intended to mislead, and itself must have actually misled. The party keeping silent must have known, or had reasonable grounds for believing, that the other

party would rely and act upon his silence. *The burden of showing these things rests upon the party invoking the estoppel."* (Italics ours.)

In the instant case, there was no evidence whatsoever that any officer, agent, or representative of Spokane county knew that the respondent was constructing a building on the county's land until it had been completed. The building was started, the record shows, early in 1935, and was finished in three months. No one connected with the county knew anything about it until a deputy assessor made an inspection and appraisal of the completed structure in the fall of 1935. Respondent failed to establish the essential elements of estoppel by silence.

The trial court also concluded the appellant was estopped to claim the improvements in question, because the county had assessed the entire freight depot as the property of the respondent and, for several years, had collected taxes on that basis.

The record discloses that the county actually never assessed the respondent's freight depot for the purpose of taxation. A deputy county assessor testified that, beginning with the year 1936, the state tax commission assessed all the respondent's operating properties in Spokane county, including the depot in question; that the assessments were certified by the tax commission to the county assessor; and that, thereafter, the assessor was "not officially connected with that assessment in any way." The same witness further stated:

"Well, in the fall of 1935 our office appraised the building, and the building was valued at [as] one unit, and the assessment was placed—*we intended to place the assessment* on these four lots regardless of the fact the building extended over onto Hawkeye Lake. However, the Legislature passed an act effective in 1936 whereby the Tax Commission took over the duties of assessing this property, and *as far as I know,* why, that

entire building was assessed by the Tax Commission and they allocated and considered it as being on the four lots and not on the Hawkeye Lake. In other words, there is no evidence anywhere to show that that part of the building occupied by Hawkeye Lake is assessed anywhere except on these four lots and has been assessed as a unit on the four lots." (Italics ours.)

That this appraisal, or estimate, of the value of the building to which the deputy assessor referred was never placed upon the 1935 tax roll, as the assessment for that year, appears from the undisputed testimony of a deputy county treasurer, also called as a witness for the respondent. He stated:

*"Taxes of the 1935 tax roll, paid in 1936* on Lots 7, 8, 9, 10 and 11, Block 9, were paid by the Consolidated Frieght Lines. Q. How much did they pay that year? A. $42.59. Q. That was on the vacant property out there? A. *Vacant lots."* (Italics ours.)

The plain import of the foregoing testimony is that the *building* was first assessed for taxation in 1936, and the assessment for that year was made by the state tax commission. It is not questioned, however, that the respondent paid taxes to Spokane county on the entire building for three years in the amount of approximately $925 per year. However, even if the county officials did wrongfully assess and tax the improvements on the Hawkeye lake parcel as the property of the respondent, that would not be sufficient to estop the county from asserting its title to the property.

In *Seattle v. Hinckley,* 67 Wash. 273, 121 Pac. 444, the city of Seattle claimed a strip of land as a public street by dedication and prescription, and brought suit to quiet title. Although the city had collected taxes and local assessments on the property from the defendant and his predecessor, the court held the city was not estopped from asserting its claim. Other jurisdictions, without any dissent that has been called to our atten-

tion, support our holding in the *Hinckley* case, to the effect that a municipality, or county, is not estopped to assert title to its property because of having wrongfully assessed and taxed it as the property of a private owner. *Kinsolving v. Lasswell Lumber Co.,* 318 Mo. 408, 300 S. W. 506; *Hecker v. Bleish,* 319 Mo. 149, 3 S. W. (2d) 1008; *Kunkel v. Griffith,* 325 Mo. 392, 29 S. W. (2d) 64; *Geneva v. Cayuga Oil Co.,* 135 Misc. 673, 238 N. Y. Supp. 187; *Einsenhart v. Denver,* 27 Colo. App. 470, 150 Pac. 729; *Lantz v. Los Angeles,* 185 Cal. 262, 196 Pac. 481; *Hecker v. Denver,* 80 Colo. 390, 252 Pac. 808.

■ We pass now to the second question presented for determination: Was the respondent entitled to recover under the betterment statute?

Section 1 of the act, p. 262 (Rem. Rev. Stat., § 797 [P. C. § 7523]) provides:

"*In an action for the recovery of real property* upon which permanent improvements have been made or general or special taxes or local assessments have been paid *by a defendant,* or those under whom he claims, holding in good faith under color or claim of title adversely to the *claim of plaintiff,* the value of such improvements and the amount of such taxes or assessments with interest thereon from date of payment must be allowed *as a counterclaim to the defendant.*" (Italics ours.)

Section 2, p. 262 (Rem. Rev. Stat., § 798 [P. C. § 7524]) prescribes what the "*counterclaim* shall set forth," and § 3, p. 262 (Rem. Rev. Stat., § 799 [P. C. § 7525]) recites that "If the judgment be in favor of the *plaintiff* for the recovery of the realty, and of the *defendant upon the counterclaim,*" certain specified relief shall be given. (Italics ours.)

The statute, by its plain terms, indicates that it was intended to apply only to an action brought by the rightful owner, as plaintiff, to recover real property.

In the case of *North End Workers Etc. Ass'n v. Sablich*, 116 Wash. 111, 198 Pac. 738, plaintiff brought an action for specific performance of a contract to purchase land, but it appeared that the agent who assumed to represent the owner had acted without authority. The plaintiff had placed upon the land valuable improvements for which, we held, it could not recover. While we do not regard the case as controlling here, we think that the following comment on the betterment statute, which we quote from the opinion, is worthy of note:

"Upon this situation, appellant seems to contend that it is entitled to recover the value of the improvements under the betterment statutes, Laws of 1903, p. 262, Rem. Code, §§ 797-8-9. Those statutes were enacted in connection with the statutes providing for possessory actions for the recovery of real property upon which permanent improvements have been made, etc. This is not a possessory action under the statutes, but an action for specific performance of a contract, and the betterment statutes can in no way apply."

The instant case does not meet the specific requirements of the betterment statute. Here, the respondent, the improver in possession of both the improvements and the land, brought the action, as plaintiff, against the owner of the land, as defendant. The action was not for the recovery of real property, but was essentially one to establish respondent's right to retain the improvements or to recover for their value. In other words, the respondent has attempted to use, as the basis of an original action against the land owner, a statute designed to afford relief by way of counterclaim to an improver when sued for recovery of the land by the rightful owner. This, we think, may not be done.

Appellant contends that, in any event, the respondent would not be entitled to recover under the better-

ment statute for the reason that Spokane county owned the Hawkeye lake parcel at the time the improvements were placed thereon, and, under the decisions of this court, an improver cannot hold *"adversely* to the claim of" a county as to land acquired and held by the county in furtherance of the process of collecting taxes. However, since we have concluded that the statute does not apply for the reasons which we have already stated, we shall not pass upon the question raised by such contention.

The judgment is reversed, with direction to dismiss the action.

ALL CONCUR.

