IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| COVINGTON LAND, LLC, a Washington corporation, | ) ) ) | No. 81232-7-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| CITY OF COVINGTON, a municipal corporation and political subdivision of the State of Washington, | ) ) ) ) | |
| | ) | |
| Respondent. | ) ) | |

HAZELRIGG, J. — Covington Land, LLC seeks reversal of a superior court order dismissing with prejudice its Land Use Petition Act (LUPA)[1] appeal for lack of jurisdiction based on invalid service of process on the City of Covington. Covington Land argues that the service was valid because LUPA does not require personal service on a city and because the service, though indirect, constituted secondary or substitute service sufficient to commence a LUPA action. In the alternative, it argues that the City should be estopped from challenging service because its employees misled the process server, who reasonably believed that she served the appropriate party. Because the plain language of LUPA requires personal service and a petitioner must strictly comply with LUPA's procedural requirements before invoking the superior court's appellate jurisdiction, the service

---

[1] Ch. 26.70C RCW.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

was invalid. Estoppel is not warranted because Covington Land has not shown that the City's employees had full knowledge of the facts or any duty to speak, or that Covington Land lacked knowledge of the facts or any convenient and available means of establishing such knowledge. We affirm.

FACTS

Covington Land owned, and proposed to redevelop, approximately 7.65 acres located at 27552 Covington Way S.E., which is zoned for general commercial use. The City of Covington imposed conditions on its approval of the commercial site development permit that would preclude a significant portion of Covington Land's proposed development. Covington Land appealed the conditions to the City of Covington Hearing Examiner. In a written decision dated November 18, 2019, the Hearing Examiner denied Covington Land's appeal and sustained the City's conditions.

Covington Land appealed the decision to the King County Superior Court under the Land Use Petition Act (LUPA). Covington Land filed its LUPA action on December 9, 2019. That day, at 9:54 a.m., Covington Land's counsel emailed the LUPA petition and summons to a national professional process server with express instructions to serve the City Clerk for the City of Covington the same day and to confirm service. At 3:04 p.m., Covington Land's counsel was informed that service of the pleadings on the Covington City Clerk had been completed by process server Sandra Ginter.

On January 30, 2020, the City filed a motion to dismiss. In the motion, the City stated that Ginter had hand-delivered the LUPA summons and complaint to

the City's Permit Center Manager, Kelly Thompson, not the City Clerk. The City argued that, because Ginter did not serve the City Clerk as required by LUPA, service was improper and the court was without jurisdiction.

The motion was supported by the declarations of Thompson and Robert Lindskov, the City Engineer who greeted Ginter at the front counter of City Hall on December 9, 2019. Lindskov stated that Ginter said she had something to drop off for the City and needed "someone I can give something to like a City Clerk or something." He checked for the City Clerk in her office, but when he could not locate her, he asked Thompson if she would be willing to help the visitor. He did not inform Ginter that Thompson was not the City Clerk.

Thompson asserted that Ginter handed her a stack of papers. She stated that Ginter did not inform her that she was serving a lawsuit; ask for the Mayor, City Manager, City Clerk, or any of their designees; or ask for Thompson's name or title. Thompson did not identify herself to Ginter or ask to whom the papers should be delivered.

Covington Land responded that the motion was not timely filed and that the City should be estopped from challenging service as insufficient. It requested that the court at least defer ruling to allow discovery regarding the circumstances surrounding service. Covington Land attached the email notification that it had received at 3:04 p.m. on December 9, 2019, which stated that Ginter had served the documents on "Kelly Anoma" at the front desk of City Hall. The email also included Ginter's description of service: "Arrived at office at city hall, a man came out and asked if I had been helped[.] I said no, I explained I needed a city clerk,

he said let me get Kelly. Kelly anoma [sic] came forward and I handed her the documents." In a declaration, Ginter stated that, based on Lindskov's response to her request, she believed that Kelly was the City Clerk and that Lindskov was going to bring the City Clerk out to meet her. Ginter asserted that she said to the woman who came to the desk, "[Y]ou must be Kelly," and the woman responded that she was. Ginter also stated that she asked Kelly for her last name, and Kelly told her that it was Anoma.

In a reply declaration, Thompson asserted that she did not identify herself as "Kelly Anoma" to Ginter, nor was she aware of any person by that name working at the City. She guessed that Ginter might have believed that her last name was Anoma based on her signature on the service slip. Thompson also noted that the City publishes a staff directory on its publicly available website that lists Sharon Scott as the City Clerk for the City of Covington.

On February 7, 2020, the court entered an order granting the City's motion to dismiss for lack of jurisdiction "with the exception that the Court is reserving ruling on the issue of substitute secondary service." The court authorized limited discovery on the issue and stated that it would entertain a motion after discovery was completed.

Covington Land served the City with interrogatories and proposed written deposition questions to be presented to Thompson. Thompson stated that, after receiving the documents from Ginter, she saw that the heading on the first page referenced "Covington Land, LLC," so she gave the documents to Bryan Bykonen, a Senior City Planner working on the Covington Land project. The City stated in

response to Covington Land's interrogatories that Bykonen sent the City Clerk an email at 4:56 p.m. on December 9, 2019 that included as an attachment the summons and petition. The Clerk replied to Bykonen on December 10, 2019 acknowledging receipt of his email.

After completing the limited discovery authorized by the court, Covington Land filed a motion requesting that the court declare that service of process was timely or, in the alternative, find that the additional evidence produced from the limited discovery justified an evidentiary hearing on whether the City should be estopped from claiming insufficient service. On July 6, 2020, the superior court denied the motion, denied the request for an evidentiary hearing, and dismissed the petition in its entirety with prejudice.

Covington Land appealed from the February 7, 2020 decision. It filed an amended notice of appeal after the superior court denied its motion on July 6, 2020.

ANALYSIS

Covington Land contends that the superior court erred in dismissing its LUPA appeal for failure to properly file and serve its petition within the statutory deadline. We review a trial court's dismissal of an action on legal grounds de novo. Witt v. Port of Olympia, 126 Wn. App. 752, 757, 109 P.3d 489 (2005).

Except in certain limited circumstances, LUPA provides the exclusive means for judicial review of final land use decisions by local jurisdictions. RCW 36.70C.030(1). LUPA was enacted "to reform the process for judicial review of land use decisions made by local jurisdictions[ ] by establishing uniform, expedited

- 5 -

appeal procedures and uniform criteria for reviewing such decisions[ ] in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010. The superior court acts in its limited appellate capacity when reviewing an administrative decision. Fay v. Nw. Airlines, Inc., 115 Wn.2d 194, 197, 796 P.2d 412 (1990). "'[A]ll statutory requirements must be met before jurisdiction is properly invoked'" in an administrative appeal. Id. (quoting Spokane County v. Utils. & Transp. Comm'n, 47 Wn. App. 827, 830, 737 P.2d 1022 (1987)).

A party appealing a final local land use decision must file and serve the LUPA petition within 21 days of issuance of the land use decision. RCW 36.7C.040(3). For purposes of this requirement, the date on which a land use decision is issued is "[t]hree days after a written decision is mailed by the local jurisdiction or, if not mailed, the date on which the local jurisdiction provides notice that a written decision is publicly available." RCW 36.7C.040(4). LUPA specifies that "[s]ervice on the local jurisdiction must be by delivery of a copy of the petition to the persons identified by or pursuant to RCW 4.28.080 to receive service of process." RCW 36.7C.040(5). Under the referenced statute, a summons in an action against any town or incorporated city "shall be served by delivering a copy . . . to the mayor, city manager, or, during normal office hours, to the mayor's or city manager's designated agent or the city clerk thereof." RCW 4.28.080(2). The statute states that "[s]ervice made in the modes provided in this section is personal service." RCW 4.28.080.

I.    Validity of Service

    A.  Personal Service Requirement

Covington Land first contends that service of process was sufficient to commence the LUPA action because RCW 36.70C.040(5) does not require personal service.[2]

Our fundamental duty in interpreting a statute is "to ascertain and implement the legislature's intent." Prosser Hill Coal. v. County of Spokane, 176 Wn. App. 280, 288, 309 P.3d 1202 (2013). When interpreting a statute, courts first look to the plain language of the statute to discern its meaning. Kilian v. Atkinson, 147 Wn.2d 16, 20–21, 50 P.3d 638 (2002). "We discern plain meaning from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." Prosser Hill Coal., 176 Wn. App. at 290 (internal quotation marks omitted). We must give meaning to every word and interpret the statute as it is written. Id. at 288. If the statutory language is clear on its face, there is no need to employ the canons of statutory construction, review legislative history, or analyze relevant case law to ascertain the meaning of the statute. Kilian, 147 Wn.2d at 20–21. A statute is ambiguous only if it can reasonably be interpreted more than one way, not merely because "different interpretations are conceivable." Id.

_____

[2] Covington Land states in its opening brief that "the filing and service deadline for the LUPA Petition was December 16, 2019" and states that it treated December 9, 2019 as the deadline "in an abundance of caution." In its argument, it acknowledges that, "to be timely served, the filed LUPA Summons and Petition had to be delivered to the City Clerk by 5:00 p.m. on December 9, 2020." Although the City lists as an issue on appeal the date on which the statute of limitation began to run and devotes a section of its brief to that issue, Covington Land does not provide sufficient argument to raise this issue. See Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."). Accordingly, we decline to consider this issue and treat December 9, 2020 as the filing deadline for Covington Land's LUPA petition.

Covington Land acknowledges that Washington courts have consistently held that the procedural requirements of LUPA must be strictly met before the superior court's jurisdiction under the Act may be properly invoked. See, e.g., Durland v. San Juan County, 182 Wn.2d 55, 67, 340 P.3d 191 (2014) ("[W]e require strict compliance with LUPA's bar against untimely or improperly served petitions."); RST P'ship v. Chelan County, 9 Wn. App. 2d 169, 175, 442 P.3d 623 (2019) ("The petitioner must strictly meet the procedural LUPA requirements before properly invoking a trial court's appellate jurisdiction under the act."); Citizens to Pres. Pioneer Park, LLC v. City of Mercer Island, 106 Wn. App. 461, 467, 24 P.3d 1079 (2001) ("The procedural requirements of the Land Use Petition Act (LUPA) have to be strictly met before a trial court's appellate jurisdiction under the Act is properly invoked.").

However, Covington Land contends that the plain language of RCW 36.70C.040(5) supports its position that hand-to-hand service is not required. The statute provides that service on a local jurisdiction must be accomplished "by delivery of a copy of the petition to the persons identified by or pursuant to RCW 4.28.080 to receive service of process." RCW 36.70C.040(5). Covington Land argues that the phrasing of the statute indicates that service may be accomplished by one of two methods: "(1) 'Delivery' of a copy of the petition to the persons identified by RCW 4.28.080; or (2) 'Pursuant to RCW 4.28.080,' which requires 'personal service.'" Therefore, Covington Land reasons the term "delivery" in RCW 36.70C.040(5) cannot mean "personal service" because, if so interpreted, the term would be superfluous and redundant: "if the word ['delivery' in RCW

36.70C.040(5)] is to be given meaning, it must mean something different than 'pursuant to' RCW 4.28.080." Because of this, Covington Land contends that "[t]here is, at the very least, an ambiguity in LUPA regarding the modes of delivery authorized."

The language of RCW 36.70C.040(5) and structure of RCW 4.28.080 make clear that Covington Land's reading of these statutes is incorrect. Some subsections of RCW 4.28.080 specify persons to be served in certain types of actions. In reference to these subsections, the statute generally reads something like, "The summons shall be served by delivering a copy, if the action is against [a specified type of defendant], to [a specified person or type of person]." However, other subsections cross-reference different statutes that provide the applicable manner of service. In these instances, the statute reads something like, "The summons shall be served by delivering a copy, if the action is against [a specified type of defendant], as provided in [another statute]."

The specific subsection of RCW 4.28.080 concerning service on a town or city follows this same convention, including both specified persons to be served and a specified manner of service. RCW 4.28.080(2). In this subsection, the statute requires that the summons be served by delivery (1) to the Mayor or City Manager or (2) during normal office hours to the Mayor's or City Manager's designated agent or the City Clerk. Id.

Covington Land reads RCW 36.70C.040(5) to distinguish between "delivery of a copy of the petition" and service "pursuant to RCW 4.28.080." This is not consistent with RCW 4.28.080. Rather, RCW 36.70C.040(5) provides that service

must be accomplished by delivery of a copy of the petition either (1) to the persons identified by RCW 4.28.080 to receive service of process or (2) in the manner provided by RCW 4.28.080. Although perhaps not a model of clarity, RCW 36.70C.040(5) does not contain superfluous language and is not ambiguous. The plain language of RCW 36.70C.040(5) requires personal service as described in RCW 4.28.080.

B. Indirect Service

Covington Land also contends that service of process was sufficient to commence the LUPA action because, although the delivery was indirect, it constituted "substitute or secondary service" on the City Clerk. Substitute service and "direct, hand-to-hand—but 'secondhand'—service" are distinct concepts. See Scanlan v. Townsend, 181 Wn.2d 838, 848, 336 P.3d 1155 (2014). RCW 4.28.080(16) authorizes "substitute service—'leaving a copy of the summons at the house of [the defendant's] usual abode with some person of suitable age and discretion then resident therein'"—on a defendant not covered by any other subsection of the statute. See Scanlan, 181 Wn.2d at 847 (quoting former RCW 4.28.080(15) (2012), recodified as RCW 4.28.080(16)). Covington Land's argument does not appear to concern substitute service, so we will not address this issue.

In support of its argument, Covington Land cites cases in which Washington courts have found personal service adequate when accomplished by multiple people. See Scanlan, 181 Wn.2d at 854–56; Brown-Edwards v. Powell, 144 Wn. App. 109, 111–12, 182 P.3d 441 (2008); Reiner v. Pittsburg Des Moines Corp., 35

Wn. App. 331, 333–34, 666 P.2d 396 (1983). "[D]irect, hand-to-hand—but 'secondhand'—service" may be sufficient so long as the service is made by an allowable person. Scanlan, 181 Wn.2d at 848. "[A]ny person over 18 years of age who is competent to be a witness in the action, other than a party" may serve process. CR 4(c). This rule does not require that the server act at the behest of a party or even with knowledge that their actions constitute service:

> Nothing in [CR 4(c)] requires that a process server have a contractual obligation to serve process. Nor is there any requirement of proof of intent to serve process. And we find nothing that would prohibit a person who comes into possession of a summons and complaint by defective service from being a competent process server.

Brown-Edwards, 144 Wn. App. at 112.

Covington Land argues that, even if personal service was required, the City Clerk was properly served by the collective efforts of Ginter, Thompson, and Bykonen. It contends that the fact that service was accomplished in part by City employees does not render the service ineffective because they are not named parties to the case. Accordingly, Covington Land contends that it strictly complied with the timely service requirements under LUPA because actual service was accomplished on December 9, 2019.

The fate of this argument hinges on our conclusion regarding whether personal service is required in this instance. As noted above, we do not agree with Covington Land's argument that the term "delivery" in RCW 36.70C.040(5) must mean something other than "personal service." Because we conclude that LUPA requires personal service, Covington Land did not satisfy the service requirements even if secondary service is permissible because the petition was not personally

delivered to the City Clerk. Covington Land acknowledges that the Clerk received the petition "ultimately by email delivery" and "not by personal in-hand service delivery." The cases relied on by Covington Land in support of their secondary service argument are inapposite because they all concerned hand-to-hand delivery. See Scanlan, 181 Wn.2d at 856; Brown-Edwards, 144 Wn. App. at 112; Reiner, 35 Wn. App. at 332.

The City also argues that secondary service is not allowable in this context because "personal service on anyone else but those individuals specifically named in RCW 4.48.080(2) is patently insufficient under LUPA." It analogizes this case to Overhulse Neighborhood Association v. Thurston County, 94 Wn. App. 593, 598–99, 972 P.2d 470 (1999). In Overhulse, the petitioner in an action against a county delivered a copy of the LUPA petition to the office of the Board of Commissioners rather than to the County Auditor, as required by RCW 36.70C.040(2) and RCW 4.28.080(1). Id. at 596–97. Division Two of this court held that substantial compliance, rather than strict compliance, with the service requirements was insufficient "[b]ecause LUPA provides unequivocal directives:"

> "The Legislature has named a specific person who is to be served when the defendant is a government body. The applicable statutory clause is clear in its mandate. Service on anyone other than the Auditor is insufficient." . . . [A]llowing service on an official other than the county auditor would render the provisions of RCW 36.70C.040(5) and RCW 4.28.080 meaningless.

Id. at 598–99 (internal citations omitted) (quoting Nitardy v. Snohomish County, 105 Wn.2d 133, 712 P.2d 296 (1986)).

Overhulse is instructive. The Legislature has also named a specific person to be served in an action against a town or city. See RCW 4.48.080(2). In the

- 12 -

cases cited by Covington Land, the courts analyzed only whether service was sufficient under RCW 4.28.080, not under LUPA. Further, none of those cases considered the subsection of RCW 4.28.080 relevant here. See Scanlan, 181 Wn.2d at 854–56 (analyzing former RCW 4.28.080(15)); Brown-Edwards, 144 Wn. App. at 112 (analyzing former RCW 4.28.080(15)); Reiner, 35 Wn. App. at 333–34 (analyzing RCW 4.28.080(10)). The service statute must be read in conjunction with LUPA, which requires strict compliance.

The City also points out that "[t]o allow parties to serve random city employees with litigation and then wait to see if it serendipitously makes its way to one of the individuals named in RCW 4.28.080 eventually would render meaningless the protections and [certainty] afforded by RCW 36.70C.040(5) and RCW 4.28.080." As noted above, the stated purpose of LUPA is to create "uniform, expedited appeal procedures" to facilitate "consistent, predictable, and timely judicial review." RCW 36.70C.010. This purpose is not advanced by allowing secondary service rather than strict compliance with the requirements laid out in the relevant statutes. The indirect delivery here was insufficient under LUPA.

II.    Equitable Estoppel

Covington Land argues in the alternative that the City should be estopped from objecting to service because Ginter and Covington Land had a right to rely on the City employees' actions implying that Thompson was the proper party to receive service. Covington Land argues that "the unique circumstances presented

in this case justify invoking the doctrine of equitable estoppel so as to allow [the] appeal to be decided on the merits."

The doctrine of equitable estoppel is based on the principle that "a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon." Wilson v. Westinghouse Elec. Corp., 85 Wn.2d 78, 81, 530 P.2d (1975).

> The elements of equitable estoppel are: "(1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in [reasonable] reliance upon that act, statement, or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement, or admission."

Lybbert v. Grant County, 141 Wn.2d 29, 35, 1 P.3d 1124 (2000) (alteration in original) (quoting Bd. of Regents of Univ. of Wash. v. City of Seattle, 108 Wn.2d 545, 551, 741 P.2d 11 (1987)). These elements must be established by clear, cogent, and convincing evidence. Id. "The party asserting estoppel must show both lack of knowledge of the facts and the absence of any convenient and available means of acquiring such knowledge." Overhulse, 94 Wn. App. at 600.

Washington courts have consistently recognized, under appropriate circumstances, the application of estoppel by silence. Sorenson v. Pyeatt, 158 Wn.2d 523, 540, 146 P.3d 1172 (2006). The basic premise of this doctrine is that, "'[i]f one maintains silence when in conscience [they] ought to speak, equity will debar [them] from speaking when in conscience [they] ought to have remained silent.'" Huff v. N. Pac. Ry. Co., 38 Wn.2d 103, 114–15, 228 P.2d 121 (1951) (quoting Harms v. O'Connell Lumber Co., 181 Wash. 696, 700, 44 P.2d 785

(1935)). Estoppel by silence will not arise unless an individual has full knowledge of the facts and a duty to speak:

> "Full knowledge of the facts is essential to create an estoppel by silence or acquiescence. . . . Mere silence, without positive acts, to effect an estoppel, must have operated as a fraud, must have been intended to mislead, and itself must have actually misled. The party keeping silent must have known or had reasonable grounds for believing that the other party would rely and act upon [their] silence. The burden of showing these things rests upon the party invoking the estoppel."

Consol. Freight Lines v. Groenen, 10 Wn.2d 672, 677–78, 117 P.2d 966 (1941) (emphasis omitted) (quoting Blanck v. Pioneer Mining Co., 93 Wash. 26, 34, 159 P. 1077 (1916)).

Covington Land argues that "the failure of Lindskov and/or Thompson to clarify that Thompson was not, in fact, the City Clerk, constitutes exactly the circumstances where estoppel by silence is appropriate." It argues that the circumstances of this case are particularly compelling because Ginter "was led to believe that she herself personally served the City Clerk" and that she "had good reason to form that belief." The City responds that Ginter

> could have easily asked Ms. Thompson her name and title, or even have inquired as to the name of the City Clerk. She did not. Covington Land had a number of convenient and simple means of acquiring the relevant knowledge, both at the time of service and in advance, and simply chose not to utilize them.

The City also points out that Ginter did not convey to Lindskov or Thompson that she was there to serve litigation or that she needed to serve it on the City Clerk of Covington. Despite the fact that Lindskov initially looked for the City Clerk, the City vehemently disagrees with Covington Land's contention that Lindskov understood Ginter to be asking for the Clerk specifically.

- 15 -

The City has the better argument. Covington Land concedes that neither Thompson nor Lindskov made any affirmative statement to Ginter that Thompson was the City Clerk or was authorized to accept service on the Clerk's behalf. Covington Land has not established that Thompson or Lindskov had full knowledge of the facts that Ginter needed to serve the City Clerk or that they had a duty to inform her that Thompson was not the City Clerk. Ginter could have easily ascertained whether Thompson was an appropriate party to receive service and failed to do so. As the City notes, Covington Land also failed to acquire the relevant knowledge and ensure that the proper party was served. Despite its reliance on a professional process server, "the plaintiff remains responsible for any failure to comply with the requirements for valid service of process." Scanlan, 181 Wn.2d at 856. Equitable estoppel is not appropriate.[3]

Affirmed.

WE CONCUR:

_____
Coburn, J.

_____
Andrus, A.C.J.

_____

[3] Although Covington Land argued in its briefing that the superior court erred in denying its request for an evidentiary hearing on the issue of equitable estoppel, counsel conceded at oral argument that further discovery was not likely to clarify the issues and retracted its request for an evidentiary hearing.