[No. 25490. Department One. May 4, 1935.]

MARY C. HARMS, *Respondent,* v. O'CONNELL LUMBER COMPANY *et al., Appellants.*[1]

*Dysart & Ellsbury* and *Ponder & Ponder,* for appellants.

*P. C. Kibbe* and *J. H. Jahnke,* for respondent.

MAIN, J.—This action was brought to quiet title to an eighty-acre tract of land in Lewis county, and the timber thereon. The cause was tried to the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiff was entitled to prevail. From the judgment entered quieting the title to the land and the timber in the plaintiff, the defendants appeal.

[1]Reported in 44 P. (2d) 785.

The O'Connell Lumber Company and the Chehalis Mill Company are both corporations organized under the laws of this state. May 27, 1907, one J. A. Veness, being then the owner of a large tract of timber land in Lewis county, by contract, sold the eighty acres involved in this action to Theodore Harms. This contract was not signed by Mrs. Veness. In the contract, there was this provision:

"Reserving also unto the said parties of the first part [Veness], their heirs, executors, administrators or assigns all timber now standing and growing or fallen on the above described lands also;"

and there was a reservation of the right to construct tramroads and railroads over and across the lands described in the contract.

January 8, 1908, by what is designated a timber deed, J. A. Veness and Augusta Veness, his wife, and F. E. Veness conveyed to the O'Connell Lumber Company "all our interest in the timber situated on the following described real estate situate in the County of Lewis and state of Washington, to-wit:" Then follows a large number of descriptions, one of which is the land in question. The deed also conveyed, in addition to the timber, the railroad rights of way which were reserved in the contract to Harms, and assigned to the lumber company all outstanding contracts for the sale of the lands mentioned in the deed and the balance of the purchase price due thereon.

October 28, 1908, J. A. Veness and wife, by deed, conveyed to Harms the land covered by the contract to him previously made. This deed contained this provision:

"Second, reserving also unto the said parties of the first part [Veness and wife], their heirs, executors, administrators or assigns, all timber now standing and growing or fallen on the above described lands;"

and there was also a reservation of the right to construct and maintain tramroads or railroads over and across the land described. The respondent, Mary C. Harms, has succeeded to the rights of her husband and herself under the contract and deed referred to.

November 7, 1925, the O'Connell Lumber Company entered into a logging contract with the Chehalis Mill Company by which the latter was to log the lands therein specified or referred to, which included the timber on the Harms' eighty. After this contract was entered into, the mill company erected a mill and started logging, projecting its logging railroad, being constructed from time to time, in the direction of the Harms' land.

April 9, 1929, Mrs. Harms sold to the mill company the timber on a forty-acre tract of land which she owned, and which tract of land cornered with the eighty involved in this action. The deed conveying this timber gave the right to the mill company to build and operate all necessary railroads and other conveniences for the cutting and removing of the timber. As to what took place between the representative of the mill company and Mrs. Harms at the time this purchase and deed were made, with reference to the then declared intention of the mill company, after logging the tract conveyed by that deed, to proceed to log the eighty which is involved in this action, the evidence is in direct dispute.

During the year 1930, the mill company built two spur tracks across the lands involved in this action, which connected with its logging road. In building these spur tracks, it expended $2,000 or $2,500, the exact amount of which does not appear. Mrs. Harms owned other lands in the vicinity which were used for farm purposes, and fourteen acres of the land in question were of this character. Mrs. Harms lived in close

proximity to the eighty acres of land through which the spur tracks were constructed, and her son lived nearby and operated the farm lands under a lease from his mother. From the time the contract of 1907 was made until the time this action was instituted, the land and the timber were assessed separately for taxation purposes, and the lumber company each year paid the taxes upon the timber and Mrs. Harms upon the land. At about the time the spur tracks mentioned were completed, or very soon thereafter, and on May 4, 1931, the present action was begun by the service of the summons and complaint.

This action is very like that of *Hay v. Chehalis Mill Co.,* 172 Wash. 102, 19 P. (2d) 397. In that case, the same timber deed was involved, and the deed to Hay, the plaintiff in that case, contained the same reservation of the timber as the deed to Harms in this case contained, with the exception that, in the Hay deed, in the reservation of the timber, the word "forever" was used. Under the holding in the *Hay* case, the respondent, Mrs. Harms, in this case owns the land, the eighty acres here involved, and the O'Connell Lumber Company owns the timber thereon, with the right of removal of the same within a reasonable time. Even though the word "forever" was used in the reservation in the Hay deed, it was held in that case that the right of removal was not in perpetuity, but only for a reasonable time. In that case, it was said:

"Aside from the language of the habendum clause, the deed fixes no time for the removal of the timber. In the absence of any fixed or specified time for removal, it is the rule that a reasonable time is inferred. *Nelson v. McKinney,* 163 Wash. 529, 1 P. (2d) 876. It is also the rule that, unless the deed clearly manifests an intention on the part of the grantor to convey a perpetual right to enter upon the land and remove the timber, the purchaser will be allowed only a reasonable time for such removal, and what is a reason-

able time is a question of fact, dependent upon the circumstances of the case. *Morgan v. Veness Lumber Co.*, 108 Wash. 674, 185 Pac. 607. The deed itself does not, in our opinion, clearly manifest such intention.''

From this, it follows that the reservation in the deed in the *Hay* case was, in legal effect, the same as the reservation in the deed in this case to Theodore Harms.

The title to the land being in Mrs. Harms and the title to the timber being in the O'Connell Lumber Company, the question arises as to whether that company now has the right to remove the same. Without so deciding, it will be assumed that more than a reasonable time for the removal of the timber since the contract of May 27, 1907, was made, has expired. If the lumber company now has the right of removal, giving effect to the assumption just made, it must be by reason of the fact that the respondent is now estopped because she stood by and permitted the mill company to construct its spur tracks and incur the expense incident thereto. To say, under the evidence in this case and the facts about which there can be no question, that she did not know that the spur tracks were being constructed and impliedly acquiesce therein, would be too great a tax upon credulity.

If one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to have remained silent. This rule of estoppel is applicable where the owner of property stands by and knowingly permits another to expend money upon it by making improvements, erecting buildings, and the like.

In 2 Pomeroy's Equity Jurisprudence, § 818, under the heading of Acquiescence as an Estoppel to Rights of Property or of Contract, it was said:

''Acquiescence consisting of mere silence may also operate as a true estoppel in equity to preclude a party

from asserting legal title and rights of property, real or personal, or rights of contract. The requisites of such estoppel have been described. A fraudulent intention to deceive or mislead is not essential. All instances of this class, in equity, rest upon the principle: If one maintain silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent. A most important application includes all cases where an owner of property, A, stands by and knowingly permits another person, B, to deal with the property as though it were his, or as though he were rightfully dealing with it, without interposing any objection, as by expending money upon it, making improvements, erecting buildings, and the like. Of course, it is essential that B should be acting in ignorance of the real condition of the title, and in the supposition that he was rightful in his own dealing.''

It is true that, where the property rights of the respective parties sufficiently appear of record, mere silence does not work an estoppel. But that rule is not here applicable. Whether the mill company had a right to remove the timber depended upon whether or not more than a reasonable time had elapsed, and this was a question of fact. The law, in the text from which a paragraph has just been quoted, is applicable to the facts in this case.

It follows from what has been said that the mill company has a right to remove the timber from the land in question, and the time within which it may do so will be fixed at a period of six months from the time the remittitur from this court is filed in the superior court.

The judgment will be reversed, and the cause remanded with direction to dismiss the action.

MILLARD, C. J., BEALS, GERAGHTY, and TOLMAN, JJ., concur.