[No. 31333.   Department Two.   February 23, 1951.]

JAMES B. HUFF, et al., Appellants, NORTHWEST CITIES GAS COMPANY, Respondent, v. NORTHERN PACIFIC RAILWAY COMPANY, Respondent and Cross-appellant.[1]

[1]Reported in 228 P. (2d) 121.

*Velikanje & Velikanje, John S. Moore, Jr.,* and *Halverson & Applegate,* for appellants.

*Bernard J. Lehrer, Velikanje & Velikanje, John S. Moore, Jr., Halverson & Applegate,* and *Jack M. King,* for respondent.

*Brown, Hawkins & Olson, Dean H. Eastman,* and *Roscoe Krier,* for respondent and cross-appellant.

HAMLEY, J.—This action was instituted by James B. Huff and Cleo M. Huff, husband and wife, to establish, by judicial decree, their alleged right to use a certain roadway existing across the property of the defendant, Northern Pacific Railway Company. Northwest Cities Gas Company intervened for the purpose of obtaining similar relief against defendant. The plaintiffs and intervener, in their respective complaints, alleged that they ·have obtained prescriptive easements by an open, notorious, continuous and adverse use of such roadway for a period in excess of ten years.

Defendant owns certain industrial property in the city of Yakima, Washington, extending south one block from Walnut street on the north to Pine street, and then continuing south for an additional distance of about two blocks to plaintiffs' property. Walnut and Pine are dedicated streets. Prior to 1943, First avenue south, then a dedicated street, ran in a northerly and southerly direction from Walnut to Pine, and intersected defendant's property lying between those two streets.

The roadway in question extends south from this intersection of First avenue south and Pine street, and across defendant's property, for about two blocks, to plaintiffs' prop-

erty. The roadway then continues south across plaintiffs' property to intervener's adjoining property on the south. It is thus seen that the roadway from Pine street on the north to intervener's property on the south is, in effect, an extension of First avenue south as the latter avenue existed prior to 1943. In that year, First avenue south was, at defendant's request, vacated between Walnut street and Pine street.

Intervener has heretofore established, by prescription and judicial decree, its right to use that portion of the roadway which extends across plaintiffs' property. See *Northwest Cities Gas Co. v. Western Fuel Co.*, 13 Wn. (2d) 75, 123 P. (2d) 771, 17 Wn. (2d) 482, 135 P. (2d) 867. Plaintiffs and intervener now seek to establish their respective rights to use the northerly portion of the same roadway extending across defendant's property to Pine street on the north.

The record indicates that Huff began using the roadway in 1919 while he was associated with his father either as an employee or partner, or as a stockholder in Western Fuel Company. This latter company was apparently then a corporation, but, according to the admitted pleadings, it is now the assumed name of James B. Huff's fuel business. It was not until May 8, 1936, however, that Huff's father, and predecessor in interest, purchased the property served by this roadway, which plaintiffs now own. Plaintiffs do not claim the easement as a personal right (easement in gross), but claim only an easement pertinent to the land they now own. Nor do they base their claim upon use of the roadway by previous owners, prior to its purchase by Huff's father. It is therefore not necessary, in so far as a determination of plaintiffs' rights are concerned, to inquire as to the facts prior to May 8, 1936.

The record indicates that, from May 8, 1936, when Huff senior purchased the property now owned by plaintiffs, until the complaint in this action was filed on February 5, 1948, plaintiffs made open, notorious, continuous and uninterrupted use of this roadway. This seems not to be challenged by defendant. The record also indicates that such use was adverse to defendant during all of this period, except as the

adverse character of such use may have been affected by two circumstances which will be discussed at a later point in this opinion.

We turn now to the pertinent facts relative to intervener's claim. The land now owned and occupied by intervener was purchased in 1905, by the Northwest Corporation from one Dan Goodman. A gas plant was built on the property and put into operation on July 4, 1906. The plant later became the property of Pacific Power & Light Company, and was sold to intervener in 1929. Joseph Alcorn was the foreman of the gas plant, and lived on the property, from 1906 to 1946. He testified that when he came to the plant in 1906, the roadway was then in existence.

Intervener and its predecessor used the road regularly and continuously from that time on to transport coal and coke. In some years as much as twenty thousand tons of coke was transported from intervener's plant over this roadway. They also encouraged their employees and customers to use it as a means of ingress and egress. This roadway, however, was not, until 1936, intervener's sole means of ingress and egress. In that year another roadway leading into the plant was closed off by the Oregon-Washington R. & N. Co., over whose tracks this second roadway ran. The roadway here in question was, during all of this time, in approximately the same location as it is at present. While neither intervener nor its predecessor laid out or constructed the original road, they kept it in repair with cinders.

It is unnecessary to state the facts with respect to intervener's participation in the 1943 street vacation proceedings. If intervener obtained prescriptive rights to this roadway, they matured prior to 1943. There is no contention that, if then matured, these rights could have been lost by what happened in 1943.

After the trial, the court took the case under advisement, and thereafter entered a comprehensive memorandum opinion. The court held that intervener had established an easement over the roadway by prescription, but that plaintiffs had not established such an easement. A judgment was accordingly entered dismissing plaintiffs' complaint, but en-

joining defendant from interfering with intervener's use of the roadway. Plaintiffs have appealed. Defendant has cross-appealed against the portion of the judgment establishing intervener's right to an easement. We will hereinafter refer to plaintiffs as "Huff" or "appellant," intervener as "respondent" or "intervener," and defendant by that designation.

To establish an easement by prescription, the claimant must prove that his use of the right of way has been, for a period of ten years, open, notorious, continuous, uninterrupted, over a uniform route, adverse to the owner of the subservient estate, and with the knowledge of such owner at a time when he was able in law to assert and enforce his rights. *Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn. (2d) 75, 123 P. (2d) 771, and cases there cited.

Appellant's use of the roadway from May 8, 1936, when the dominant estate was acquired, to February 5, 1948, when this action was filed, appears to meet all of the foregoing tests, with the possible exception of the factor requiring that the use be adverse. As to this factor, defendant contends (1) that a landlord and tenant relationship existed between defendant and appellant until the spring of 1938 (which was within ten years of the filing of the complaint), and that adverse use could not have begun until that relationship ceased; and (2) that the transactions in connection with the street vacation proceedings in 1943 establish, as a matter of fact, that appellant's adverse use of the roadway was then interrupted, and that such use was thereafter permissive in character, or that such transactions at least estop appellant from now denying that such adverse use was so interrupted.

The trial court did not rule on the first contention, but held for defendant on its second contention, and dismissed appellant's complaint on that ground.

Defendant's contention, based upon the asserted landlord and tenant relationship, stems from a lease entered into on October 12, 1936 (but effective as of May 1, 1936) between defendant as the landlord, and Huff's father, operating the Western Fuel Company, as tenant. The leased premises bor-

dered upon the roadway in question and were situated about a block and a half north of the property owned by appellant. Defendant argues that prescriptive rights to the roadway could not accrue in favor of appellant as long as he or his predecessor in interest was a tenant of the owner of the servient estate on other lands bordering the roadway.

On December 29, 1937, defendant wrote to Huff, advising him that, on November 4, 1937, defendant had notified its officers that the lease had been canceled as of April 30, 1937. This letter indicates that defendant knew that Huff had left some portable concrete piers on the premises. Defendant stated in the letter that there was no objection to Huff removing the piers at his convenience, unless it should develop that defendant would have use for the property. The piers were not entirely removed until the spring of 1938, the exact date not appearing in the record. No rent was demanded or paid after April 30, 1937. Nor was the tenant asked to pay the taxes on the property after that date, as he would have been required to do if the lease were still in effect.

Whether the leaving of property on the premises by a tenant does or does not constitute a holding-over, is usually a question of fact to be determined in the light of all the surrounding circumstances. 51 C. J. S. 626, Landlord and Tenant, § 75. Here the facts plainly indicate that no holding-over was intended by the tenant or conceded by the landlord. The lease was terminated and the landlord and tenant relationship ceased on April 30, 1937.

More than ten years elapsed between that date and the date on which this action was instituted. It is therefore not necessary to decide whether prescriptive rights to this roadway could accrue while appellant or his predecessor was a tenant of defendant on other premises adjoining the roadway.

A proper understanding of defendant's contention and the trial court's ruling based upon the 1943 street vacation proceedings requires that the facts be set forth in some detail. Defendant, as the sole abutting owner, petitioned the city council of Yakima, on June 23, 1943, to vacate First avenue south between Walnut street and Pine street. The purpose

of the vacation was to permit defendant's tenant, California Packing Company, to expand its operations. Huff filed a protest. A hearing on the petition was held on August 9, 1943. Huff was present and renewed his protest. No action was taken at this meeting, and numerous informal meetings were held in the following weeks. On September 15, 1943, after one of these meetings, Mr. Brown, attorney for defendant, wrote a letter to Huff, reading as follows:

"After giving every consideration to our conference yesterday with the City Commissioners this is to advise you that I am authorized by the Northern Pacific Railway Company to now advise you that that company recognizes your right of use as heretofore for roadway purposes of the railway company's property along First Avenue South produced from the South line of Pine Street to your property. You are further advised that the company will make no attempt to close this roadway for your use unless and until a satisfactory substitute is provided."

One of the matters discussed at these meetings was the prospect that California Packing Company might have to expand its operations to defendant's property south of Pine street, requiring closure of the roadway in question. City officials inquired of defendant whether, in this event, the Northern Pacific Railway Company would provide Huff with another roadway to his plant. In response, defendant's industrial agent, Williams, wrote a letter dated October 6, 1943, to the mayor and council. This letter, which came to Huff's attention on that day or within the next two or three days, reads as follows:

"In connection with our application for the vacation of 1st Avenue South, a question has arisen with regard to the road situation south of Pine Street.

"We have heretofore agreed with the Northwest Cities Gas Company to provide an alternate road in the event it becomes necessary to close the extension of 1st Avenue South of Pine Street across our property.

"This is to advise you that if such closing becomes necessary we will deed to the City for street purposes a strip forty feet in width being the West forty feet of said property together with a strip 60 feet in width being the South 60 feet of said property to connect with private right-of-way of the

Gas Company across the property of the Western Fuel Company as shown colored red on the attached plat. We will also at that time deed to the Western Fuel Company the triangular strip of property lying to the south of the proposed roadway and between the property of the Western Fuel Company and Union Pacific right-of-way shown cross-hatched in yellow on attached plat.

"In the event that the plans for the future expansion of the industry does not require the closing of the present road extending south of Pine Street, when that fact is definitely ascertained in lieu of the above, we will deed a 40 foot road across our property at the existing location."

Huff testified that the city officials appealed to him to withdraw his protest, as it was the only objection on file, but advised him that, whatever he did, the petition to vacate would be granted. Huff further testified that he inquired whether, if he withdrew his protest, he would be "obligated in any way whatsoever on anything that lay south of Pine Street." According to Huff, he was advised by the city officials that their only interest in the roadway south of Pine street was to see that Huff was treated fairly and had "a satisfactory way to get in and out . . ."

On October 11, 1943, Huff wrote to the city officials withdrawing his protest. First avenue south between Walnut and Pine was thereupon vacated.

On August 26, 1946, defendant's attorney tendered Huff a deed to the triangular strip of land referred to in defendant's letter of October 6, 1943, quoted above. Huff's attorney returned the deed on the following day, stating in his letter of transmittal that Huff had no desire to accept this land, and was "insisting that the road be retained at its present location."

Defendant contends, and the trial court held, that, in view of all of the circumstances surrounding these street vacation proceedings, appellant's adverse use of the roadway was interrupted at that time, and such use was thereafter permissive in character.

This view is not based upon the idea that a binding agreement was entered into between defendant and appellant in 1943, for clearly there was no such agreement. It is based,

instead, upon the dual grounds that (1) defendant's actions at that time indicate that it did not acquiesce in the adverse use of the roadway, but permitted such use as a matter of convenience to appellant, and (2) appellant's failure to openly assert his adverse claim to the roadway during the 1943 negotiations, and his apparent acceptance of defendant's alternative route proposal, amount to an equitable estoppel. We will give separate consideration to these grounds.

An adverse use will not ripen into a prescriptive right unless the owner of the servient estate knows of, and acquiesces in, such use, or unless the use is so open, notorious, visible, and uninterrupted that knowledge and acquiescence on his part will be presumed. *Northwest Cities Gas Co. v. Western Fuel Co., supra.* There is no doubt but that, giving effect to this unrebutted presumption, appellant's adverse use of the roadway from 1937 to 1943 was acquiesced in by defendant.

We do not believe that this acquiescence was withdrawn by anything which transpired in connection with the 1943 episode. On the contrary, it seems to us that defendant's prior acquiescence in such adverse use, established by the presumption referred to above, was expressly confirmed by defendant's letter of September 15, 1943, quoted above. That letter, addressed to appellant, expressly recognized appellant's "right of use as heretofore for roadway purposes" of the right of way in question.

The trial court points out that appellant did not have a matured prescriptive right to this easement in 1943. That court therefore concluded that the "right" referred to in this letter was the right to a way of necessity across defendant's property, the defendant reserving the right to relocate this way of necessity as circumstances required, and appellant being given, in the meantime, permission to use this particular roadway as its way of necessity.

If this had been the restricted intention of defendant in writing this letter, we feel that it would have found a plainer way of expressing itself. It is to be noted that the last sentence of the letter advised appellant that defendant would

"make no attempt to close this roadway" for appellant's use "unless and until a satisfactory substitute is provided." Defendant's use of the word "satisfactory" renders this assurance subject to the interpretation that appellant was to be secure in his use of the existing roadway unless he should agree to an alternative route.

■ If this letter does not expressly confirm defendant's prior implied acquiescence in the adverse use, it at least cannot, in our opinion, be regarded as a withdrawal of such acquiescence and a license to continue using such roadway only on a permissive basis. Even if so regarded, however, this would not effectively interrupt adverse use which had been acquiesced in up to that time, so as to prevent the prescriptive easement from maturing. Where the entry has been adverse and hostile, its character as such could not be interrupted or destroyed by the property owner's unsought consent. *Naporra v. Weckwerth,* 178 Minn. 203, 226 N. W. 569, 65 A. L. R. 124.

■ The same conclusion must be reached if this letter is to be regarded as a protest or remonstrance against the hostile and adverse character of appellant's prior use of the roadway. In the latter situation, while there is some conflict in the cases, the weight of authority and the sounder reasoning seem to support the view that there must be something more than a protest to interrupt adverse use and prevent the prescriptive right from accruing. *Lehigh Valley R. Co. v. McFarlan,* 43 N.J.L. 605; *McIntyre v. Harvey,* 158 Miss. 16, 128 So. 572; *Conness v Pacific Coast Joint Stock Land Bank,* 46 Ariz. 338, 50 P. (2d) 888; 4 Tiffany Real Property (3d ed.) 585, § 1206; 1 Thompson on Real Property (Perm. ed.) 728, § 443; 5 A.L.R. 1325, annotation; 5 Restatement of the Law of Property 2935, § 459.

Subsection (2) of the Restatement comment on § 459, cited above, reads in part as follows:

"If the interruption is produced by an act not involving a judicial determination, the act must be intended to cause and must be of such a character as actually to cause a cessation of use. The cessation of use may be merely temporary, but if it actually occurs as a result of an act of the possessor

of the land done for that purpose there is an interruption. An act by the possessor of land intended to cause a cessation of use does not produce an interruption of use unless a cessation of use, temporarily at least, results. The success of the act in causing a cessation of use rather than its form or manner determines its effect as an interruption. Thus, while neither physical obstruction nor verbal or written protest, *when disregarded,* causes an interruption of use, either, when acquiesced in, is effective to produce an interruption." (p. 2939.) (Italics supplied.)

In considering the questions of withdrawal of acquiescence, extension of permission, and protests against adverse use, we have referred only to the letter of September 15, 1943. This was the only letter which passed between the parties during the 1943 negotiations, and seems to us to be the best evidence of defendant's expressed intentions regarding the nature and future status of appellant's use of the roadway. The other transactions, including the letter of October 6, 1943, will be considered in connection with the question of equitable estoppel presently to be noticed.

Defendant contends, and the trial court held, that appellant's failure to advise defendant, during the 1943 negotiations, that continued use of the roadway would be hostile and adverse, and appellant's apparent acceptance of defendant's proposition that this particular roadway might later be closed and a different one substituted, now estops appellant from asserting that the use was adverse after that date. There was no express acceptance of defendant's proposition. Therefore, such acceptance, if any, must be implied on the basis of appellant's silence and the fact that he continued to use the roadway after that date.

■ Where a person with actual or constructive knowledge of facts induces another, by his words or conduct, to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice. *Peterson v. Bergman Cabinet Mfg. Co.,* 145 Wash. 664, 261 Pac. 381; 19 Am. Jur. 642, Estoppel, § 42; 31 C.J.S. 341, Estoppel, § 108.

Such an estoppel may arise under certain circumstances from silence or inaction as well as from words or actions. *Zieman v. McKinney*, 73 Wash. 614, 132 Pac. 398; *De Boe v. Prentice Packing & Storage Co.*, 172 Wash. 514, 20 P. (2d) 1107; *Harms v. O'Connell Lumber Co.*, 181 Wash. 696, 44 P. (2d) 785; 19 Am. Jur. 661, Estoppel, § 55. The commonly stated basis for estoppel by silence, as expressed in the *Harms* case, is that:

"If one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to have remained silent." (p. 700.)

■ We do not believe that Huff's silence, after receiving defendant's letter of September 15, 1943, and after learning the contents of defendant's letter of October 6, 1943, estops him from asserting that his user continued to be adverse after those dates. As already indicated, the letter of September 15, 1943, was not a plain and unambiguous withdrawal of acquiescence in the hostile use, but was, if anything, a confirmation of that acquiescence.

The letter of October 6, 1943, quoted above, which was addressed to the city and not to appellant, speaks of an agreement with Northwest Cities Gas Company, but mentions no agreement with appellant. Only by a most strained construction can this letter be regarded as challenging the adverse character of appellant's user. At most, we believe, it served notice that defendant might, in the future, prevent appellant's prescriptive easement from accruing, by physically closing the roadway.

None of the other acts or transactions in connection with the 1943 episode appears to add support to defendant's claim of estoppel by silence. The last act in that episode was appellant's letter of August 27, 1946, expressly advising defendant that Huff "is insisting that the road be retained at its present location." Defendant's failure to challenge this adverse claim may, in fact, be said to estop *defendant* from now denying Huff's prescriptive right. Considered individually or collectively, defendant's letters and acts failed to bring home to appellant, with the required clarity and cer-

tainty, that defendant intended appellant's use of the roadway after 1943 to be permissive only. There was thus no duty on appellant to speak. Unless the circumstances plainly indicate a duty to speak, there can be no estoppel by silence. *Consolidated Freight Lines v. Groenen*, 10 Wn. (2d) 672, 117 P. (2d) 966; 19 Am. Jur. 665, Estoppel, § 55.

We conclude that appellant proved his right to a prescriptive easement across defendant's property, and that it was therefore error to dismiss his complaint.

We turn now to a consideration of defendant's cross-appeal.

The trial court based its judgment in favor of intervener upon the view that the facts tending to establish intervener's open, notorious, continuous and adverse use of the roadway are, in substance, the same as those which led this court to sustain intervener's claim of a prescriptive easement over Huff's property. See *Northwest Cities Gas Co. v. Western Fuel Co.*, 13 Wn (2d) 75, 123 P. (2d) 771, 17 Wn. (2d) 482, 135 P. (2d) 867.

Defendant urges, however, that there is an important difference between the facts in the case before us and the facts in the *Western Fuel Company* case. Defendant states that, in the latter case, the gas company constructed, built and maintained the road over which it claimed the prescriptive right, while in the instant case the road in question was already constructed and in use by tenants of the owner of the servient estate. Defendant then calls attention to, and seeks to apply, the rule that:

"Where the way in question is shown to have been opened or maintained by the owner of the soil for his own benefit, and the claimant's use of it appears to have been merely in common with him, no presumption arises that the latter's use of it was adverse or under a claim of right. In the absence of additional circumstances pertaining to the origin or nature of the claimant's use, and expressing a purpose to impose a separate servitude upon the land, the use is presumed to be permissive only." 170 A.L.R. 825.

The record in this case shows that the roadway was already in existence when intervener purchased its property

in 1906. At this time, defendant was apparently making no use of the servient property itself. It did have one tenant, occupying a small tract. The record does not indicate who opened the roadway. It is unlikely, however, that the lone 1906 tenant opened the roadway, or that it was opened for his sole benefit. This roadway extended a considerable distance to the south and beyond the tenant's tract. The roadway may well have been opened originally in connection with some use being made of the property now owned by Huff, though the record is silent on this. It is known that for some time prior to 1915, the present Huff tract was being used for the production and storage of ice.

There is no indication that defendant used or maintained the roadway, at least during the first twenty years after intervener's use began. Sometime prior to 1928, some stockyards were located on a portion of the servient estate. With these exceptions, it was not until 1928 that defendant began leasing the lands to oil companies and other tenants. Intervener's prescriptive rights accrued, if at all, by 1916.

It is our conclusion that the facts here established do not call for the application of the rule, quoted above, relied upon by defendant. We are in agreement with the trial court that the facts of this case amply sustain intervener's claim to a prescriptive easement. The underlying principles which we have applied in reaching this conclusion are fully set forth in *Northwest Cities Gas Co. v. Western Fuel Co., supra,* and need not be restated here.

Since we find that appellant and intervener have established their respective rights to a prescriptive easement, it is unnecessary to consider the further contention that there has been a common-law dedication of this right of way to the public.

The judgment is reversed on the appeal and affirmed on the cross-appeal. The cause is remanded with instructions to enter judgment for appellant similar to that which has heretofore been entered for intervener.

SCHWELLENBACH, C. J., ROBINSON, MALLERY, and GRADY, JJ., concur.