[No. 467-41388-1.  Division One—Panel 1.  April 19, 1971.]

ASBJORN ANDERSEN et al., *Respondents*, v. NORTHWEST BONDED ESCROWS, INC., et al., *Appellants.*

*Dodd, Russell, Hamlin & Coney* and *Byron D. Coney,* for appellants.

*Helsell, Paul, Fetterman, Todd & Hokanson* and *John E. Ederer,* for respondents.

WILLIAMS, J.—This action was brought for the purpose of recovering money for damages alleged to have been sustained in a real estate transaction. The trial was to the court without a jury and resulted in findings of fact from which the court concluded that plaintiffs (Andersens) were entitled to recover $10,700 from defendants Northwest Bonded Escrows, Inc. (Northwest) and its manager, Richard B. Wall (Mr. Wall). Defendants appeal from the judgment entered in that amount, and the Andersens cross-appeal asking for a larger sum.

Upon substantial evidence, the trial court found this is what happened: In the spring of 1964, a person by the name of Leith approached the Andersens with a view to purchasing six lots which they owned in the city of Seattle. Leith, a builder, proposed that he build an apartment house upon the property. When they agreed upon the sale, Leith suggested that the Andersens deed the lots to him so that he could pledge them as security for a construction loan. He further proposed that the purchase price of $20,000 be represented by his promissory note secured by a second mortgage. At Leith's suggestion, the parties went to Northwest to put their agreement into effect. This was on April 1, 1964.

At Northwest's place of business, they met with Mr. Wall, who spent an hour and a half with them going over the details of the transaction. Mr. Wall had the following documents prepared: statutory warranty deed from the Andersens to Leith, mortgage from Leith and wife to the Andersens, promissory note from Leith to the Andersens secured by the mortgage, and escrow instructions. The mortgage was in usual form, except that the following notation was contained therein:

It is expressly understood and agreed that this mortgage

is second and subordinate to any first mortgage to be secured by the mortgagors herein for building purposes, and this mortgage is not to be recorded until said mortgage is of record.

The note was for $20,000, plus interest, payable "upon sale of the building to be built on property which is legally described in the real estate mortgage securing the payment of this note." On instructions from Mr. Wall, a secretary prepared the documents by filling in blanks on forms provided by Northwest. The documents were signed during the conference. Leith agreed to pay the costs of the transaction, including the excise tax, title insurance premium for the policy to be issued to him, and fees of Northwest amounting to $72.80.

On June 2, 1964, the Andersens received the promissory note from Northwest, and in September, the mortgage. Both documents were placed in the Andersens' safe deposit box when received. In January, 1965, Leith and his wife conveyed the property to one Zorich, and within 4 months thereafter they were adjudicated bankrupt in a voluntary proceeding. Also, within that period, Zorich deeded the property to Business Factors, Inc., and was adjudicated an involuntary bankrupt.

Upon receiving the notice of the first meeting of creditors in the Leith bankruptcy, the Andersens immediately went to Northwest's office and notified Mr. Wall of this development. He assured them that they were secure, but suggested that they consult with an attorney, which they did. The attorney promptly recorded the mortgage and entered the bankruptcy maze, emerging over 2 years later with a settlement of $5,000 and a statement of charge for his professional services in the amount of $2,125. The Andersens then brought this action.

The 15 assignments of error raise issues of unauthorized practice of law, negligence, estoppel, indemnity, damage mitigation, excessive damages, and partnership.

In its pleadings, at the trial, and on this appeal, the main defense of appellants has been that Mr. Wall acted as

a mere scrivener,[1] that he did only what he was told to do, and that he would have violated the law if he had given the Andersens or Leith legal advice. The trial court found otherwise, and correctly so.[2] Although the operation of the escrow company in the case of *In re Droker*, 59 Wn.2d 707, 370 P.2d 242 (1962), may have been on a grander scale, the methods and function of Northwest's office were the same. As the court found, the legal services rendered to the contracting parties cannot be differentiated from those which would have been rendered in a law office by a practicing attorney. *Washington State Bar Ass'n v. Washington Ass'n of Realtors*, 41 Wn.2d 697, 251 P.2d 619 (1952).

The next question is that of negligence, which raises the issue of the standard of care which should be required of appellants when they practice law and whether or not they lived up to that standard in the Andersen/Leith real estate transaction. Appellants concede that if a layman undertakes to exercise discretion in the devising of the form or substance of a legal transaction, he properly should be held to the standards of a lawyer. Certainly, that is the minimum level of competency, and it may be higher. *Mattieligh v. Poe*, 57 Wn.2d 203, 356 P.2d 328, 94 A.L.R.2d 464 (1960). There is an undisputed finding of the trial court, based upon the testimony of an expert witness called by the Andersens, that if a lawyer had handled the transaction and not advised the Andersens of their peril in not recording the mortgage, he would not have conformed to the standard of care, skill, diligence, and knowledge commonly

---

[1]Scrivener: "a professional or public copyist or writer: scribe." Merriam-Webster Third Int'l Dictionary (1966)

[2]"It is now a generally acknowledged concept that the term 'practice of law' includes not only the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure, but in a larger sense includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured. *State ex rel. Laughlin v. Washington State Bar Ass'n*, 26 Wn. (2d) 914, 176 P. (2d) 301; *Smallberg v. State Bar of California*, 212 Cal. 113, 297 Pac. 916; *Eley v. Miller*, 7 Ind. App. 529, 34 N. E. 836." *In re Droker*, 59 Wn.2d 707, 719, 370 P.2d 242 (1962).

observed and exercised by a reasonably careful and prudent lawyer in the practice of law in the state of Washington. The violation by appellants of this standard of care was therefore negligence for which they are liable. *Mattieligh v. Poe, supra.*

Appellants seek to avoid liability by raising issues of contributory negligence, estoppel, indemnity, and mitigation of damages; and in so doing, claim dereliction on the part of the Andersens in not discerning the true nature of their transactions with Leith and in not proceeding more diligently and with greater success once they did discover it. The court made a finding, which is not challenged, that the Andersens were ignorant of the consequences of not recording the mortgage. Following the Leiths' adjudication in bankruptcy, the first thing the Andersens did was to notify appellants that their note and mortgage were in danger. Pursuant to the advice given by Mr. Wall, they immediately retained counsel to represent them in the bankruptcy proceedings. It appears that this was good advice. The Andersens are intelligent but unsophisticated people who could not have acted with any success at all in finding a solution to their tangled affairs. They could hardly be expected to prosecute their remedies on the note and mortgage through two bankrupt estates to Business Factors, Inc.

There is an indication in *Mattieligh v. Poe, supra,* that contributory negligence is not a valid defense in this type of case. *See also Theobald v. Byers,* 193 Cal. App. 2d 147, 13 Cal. Rptr. 864, 87 A.L.R.2d 986 (1961). If it is a defense, however, the question was for the trial court which made a determination adverse to appellants.

Appellants contend that the Andersens are estopped because they should have asserted a claim against appellants immediately, rather than have waited nearly 3 years before instituting this suit. In support of this contention, appellants cite *Huff v. Northern Pac. Ry.,* 38 Wn.2d 103, 115, 228 P.2d 121 (1951), quoting from *Harms v. O'Connell Lumber Co.,* 181 Wash. 696, 44 P.2d 785 (1935):

"If one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to have remained silent."

The fact is that the Andersens did speak, and promptly. Appellants were put on notice that the Andersens were seeking their money. All of the elements of estoppel as required by *Stouffer-Bowman, Inc. v. Webber,* 18 Wn.2d 416, 139 P.2d 717 (1943), are not present.

Appellants claim that, at the outset, the Andersens should have made demand upon them for indemnity, so that they would have subrogation rights against the bankrupts. The Andersens' claim was not one for common-law indemnity, but rather one for damages arising out of the negligence of appellants. *J. D. O'Malley & Co. v. Lewis,* 176 Wash. 194, 28 P.2d 283 (1934), cited by appellants in support of their position, is dissimilar on the facts and not authority in the situation presented here. Their brief contains no citation of authority that a tortfeasor has subrogation rights in a case of this kind, and we know of none.

Appellants introduced into evidence both testimony and records of the Leith bankruptcy for the purpose of establishing that the Andersens could have gotten more than $5,000. This presented a question of fact for determination by the trial court. In this connection, appellants assign error to the action of the trial court in sustaining an objection to a question directed to the trustee in the Leith bankruptcy as to whether he had an opinion as to whether or not the Zorich deed could have been successfully attacked. It appears from the record that at a later time the question was answered in substance.

Appellants contend Leith and the Andersens were partners, and therefore the transaction was not a sale. Upon conflicting evidence, the trial court found otherwise.

Next, we shall consider the question of damages. Appellants contend the award was too high; the Andersens that it was too low. The court made its award on the theory that the negligence of appellants had caused the Andersens to lose their property, which was of a value of $15,700, the

price which the Andersens had paid for it in May, 1962. We believe that it is incorrect to base the amount of damages upon the initial cost of the property for the reason that the Andersens' loss was not the real estate itself, which they had voluntarily deeded away, but rather the value of their security interest in that property. There was nothing illegal or ineffectual about the transaction. Leith did receive good title, and the Andersens did receive a valid promissory note secured by an initially enforceable mortgage. As damages, the Andersens are entitled to the value of the security interest in the property which they lost through the negligence of appellants, *Schirmer v. Nethercutt,* 157 Wash. 172, 288 P. 265 (1930), less their recovery in the bankruptcies.

The note for $20,000, plus interest, was to have become payable when the apartment house was built upon the property and sold. Because the deed to Zorich of January 17, 1965, and the adjudication of the Leiths as bankrupts on February 24, 1965, eliminated the possibility of the occurrence of the condition, the note became payable and a cause of action arose upon the note and the mortgage not later than February 24, 1965. *Investors Syndicate v. Henderson,* 148 Fla. 696, 6 So. 2d 629 (1942). The trial court should make a finding upon the evidence as to what the value of the security interest was at that time.

■ The Andersens also contend that only the net amount recovered from the bankruptcy should be deducted from the amount of damages found. This would be $2,875, based on a gross recovery of $5,000, less $2,125 attorney's fees. The trial court refused to allow deduction of the attorney's fees because Northwest should have been told of the incurrence of the fees. We arrive at the same result but for a different reason. *Tenco, Inc. v. Manning,* 59 Wn.2d 479, 368 P.2d 372 (1962). There is no proof that the fees charged were reasonable. *Wells v. Aetna Ins. Co.,* 60 Wn.2d 880, 376 P.2d 644 (1962).

The judgment is affirmed as to the liability of appellants and the cause remanded to the trial court to determine

damages upon the basis set forth herein and to enter judgment accordingly. The Andersens are allowed their costs on appeal.

FARRIS, A.C.J., and UTTER, J., concur.
Petition for rehearing denied July 19, 1971.
Review denied by Supreme Court September 21, 1971.