**TIUMALU SIA SCANLAN, Plaintiff,**

v.

**SOLOMONA GLEN LEVI, FALEIVA FA`AMAO TIUMALU, SUIAVA ALAMOANA MULITAUAOPELE, LISA MULITAUAOPELE, and ALAMOANA RECIPE, INC., Defendants.**

High Court of American Samoa
Land and Titles Division

LT No. 12-99
LT No. 13-99
LT No. 14-99

May 18, 2000

Before: RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Judge, and TAUANU`U, Temporary Associate Judge

Counsel: For Plaintiff, Paul F. Miller
For Defendants, Katopao T. Ainu`u

OPINION AND ORDER

Plaintiff Tiumalu Sia Scanlan ("Tiumalu"), as the *sa`o* (senior chief) of the Tiumalu family of Fagatogo, brought three actions for eviction from

buildings located on Tiumalu family communal land known as Poata and for breach of lease agreements for failure to pay rent. Each defendant occupies Tiumalu communal property and has used it for commercial benefit. These actions were originally filed as summary eviction proceedings under A.S.C.A. §§ 43.1401-.1416 in CA No. 19-99, CA No. 20-99, and CA No. 21-99. However, they were transferred to the Land and Titles Division because they involve intra-family issues germane to the communal status of the land. Trial was held jointly in these three matters on March 9-17, 2000.

## I. The Leases Underlying Each Action

Tiumalu is suing defendant Solomona Glen Levi ("Levi"), a member of the Tiumalu family, in LT No. 12-99. Tiumalu and Levi agreed to a three-year lease on premises located between the Pago Bar building and TK Spencer's, Inc. to commence on June 1, 1997, with a monthly rental of $200.00. The lease permits Levi to sublet the premises for the term of the lease, and on or about May 28, 1998, he subleased the premises to Mee Won, Inc., with a monthly rental of $850.00. However, the sublease extends through December 31, 2002, well beyond the lease term. Levi has never paid rent to Tiumalu, and his sublessee continues to occupy the premises.

The facts in LT No. 13-99 are very similar. The defendant in this case is Faleiva Fa`amao Tiumalu ("Faleiva") another member of the Tiumalu family. Tiumalu and Faleiva entered into a lease for premises known as the Pago Bar building (or the Shimasaki building) for a term of three years beginning on January 1, 1997, with a rental of $1,000 per month. This lease also permits subleasing for the term of the lease, and on or about December 20, 1999, Faleiva subleased the premises to Kuo Yen Chen dba MAKRO, with a monthly rent of $2,500. However, this sublease was for term of 10 years, far beyond the lease period. Faleiva has not paid rent to Tiumalu, and her sublessee presently occupies the premises.

In LT No. 14-99, Tiumalu is suing defendants Suiava Alamoana Mulitauaopele ("Alamoana"), also a member of the Tiumalu family, Lisa Mulitauaopele (jointly "the Mulitauaopeles) and Alamoana Recipe, Inc. ("Recipe"). This action is based on a 20-year lease agreement between Tiumalu and the Mulitauaopeles for a portion of the structure known as the Kneubuhi building. The Mulitauaopeles are primary owners of Recipe, and Recipe operates a business on the premises. Tiumalu seeks to evict the Mulitauaopeles and Recipe from the leased area, and recover back rent from the Mulitauaopeles from December 1, 1988, the beginning of the lease period, to the present.

## II. The Subject Matter of Each Lease: Building or Land

■ Tiumalu and the defendants disagree as to whether the leases include only improvements or include the land as well. The leased property is described in each of Levi's and Faleiva's leases as a "one story building . . . located on Tiumalu communal land known as POATA . . . ." The Mulitauaopeles' lease describes the property at issue as "[t]he extension to the eastern side of the building located on the commonly known as the Kneubuhl Building located on the real property known as 'POATA' . . . ." The leases unequivocally state that the buildings, not the land, are the properties to be leased. It does not matter whether the defendants subjectively understood the leases to be for the land as well as the buildings or portions of a building, because the contracts are clear, making their beliefs unreasonable and without legal force.

Because the leases are for the buildings or portions of a building, they are not subject to the requirement that leases of communal land be approved by the Governor. *See* A.S.C.A. § 37.0221. As such, they are not invalidated because the Governor's approval was not obtained.

## III. The Right to Lease Premises

Faleiva, the Mulitauaopeles, and Recipe argue that Tiumalu has no right to enforce the leases. According to defendants, the Tiumalu family gave up its right to income from the leased properties when it allowed members of the family to individually retain income from leases in a 1926 agreement. This issue was decided over 40 years ago. The 1926 agreement allowed certain family members to retain the profits from then-existing leases. One lease was with Frank Shimasaki, who leased the same building at issue in Faleiva's lease, and another was with B.F. Kneubuhl, who leased the building at issue in the Mulitauaopeles' lease. The 1926 agreement only allowed the money from leases existing at that time to be divided, while ownership was to remain with the matai of the Tiumalu family. *Haleck v. Taimane*, 3 A.S.R. 380, 385 (Trial Div. 1959). The land and the buildings on the land, along with the right to profit from buildings after the termination of the leases existing at the time of the 1926 agreement, therefore belong to the Tiumalu family.

The buildings have not been the subject of separation agreements, which would allow separate ownership of the building and the land. *See* A.S.C.A. § 37.1501-.1506. Structures that have not been separated from land are considered part of the land. *Scanlan v. B.F. Kneubuhl, Inc.*, LT No. 47-83, slip op. at 4 (Land & Titles Div. Aug. 17, 1983) (citing *Van Ness v. Pacard*, 27 U.S. 137, 143 (1829)). The Tiumalu family therefore owns the buildings, and Tiumalu has the right to lease them.

## IV. Rent or *Tautua*

### A. Levi and Faleiva

While Levi and Paleiva possibly could have used the land and provide *tautua* (traditional service to the family) rather than make rent payments under a lease if the family had agreed to it, Levi and Faleiva agreed to pay rent for the right to use their respective buildings, including the right to sublease the buildings to a third party. Levi and Faleiva are thus obligated to pay rent even though they are members of the Tiumalu family.

■ Tiumalu is not estopped from asserting the family's right to the rent payments. Levi and Faleiva are still responsible for paying for their leases despite Tiumalu's failure to insist on timely payment. *See Hunkin v. Grisard (Hem.)*, 13 A.S.R.2d 38, 40 (Trial Div. 1989). Estoppel may generally only arise from silence when the other party has a duty to speak. *Heuer v. Heuer*, 704 A.2d 913, 919 (N.J. 1998); *Huff v. N. Pac. Ry. Co.*, 228 P.2d 121, 126 (Wash. 1951). Levi and Faleiva have failed to show that Tiumalu had a duty to demand payment and that she should be equitably estopped from pursuing her claim. By failing to pay rent on the leased buildings, Levi and Faleiva have materially breached their leases.

### B. The Mulitauaopeles and Recipe

■ Like Levi and Faleiva, the Mulitauaopeles argue that they occupy the building as a traditional assignment from the *sa'o* in return for *tautua* rather than occupying the premises under the lease. They assert that Tiumalu agreed not to enforce the lease as long as Alamoana provided *tautua*. As evidence, they submitted a 1992 letter written by Alamoana, asking Tiumalu, as the *sa'o*, to allow them to render *tautua* rather than pay rent. They also state that Tiumalu only twice requested payment in the more than 11 years they have occupied the building, arguing that acceptance of *tautua* in lieu of rent is consistent with this fact.

The parties have not agreed to modify the lease to allow the Mulitauaopeles or Recipe to occupy the land in exchange for *tautua* rather than rent payments. Tiumalu stated that she agreed only to consider the Mulitauaopeles' request to replace the lease with *tautua*. One party cannot unilaterally modify a contract, and we have insufficient evidence from which to find that Tiumalu agreed to a modification.[1]

---

[1] On March 17, 2000, Tiumalu's counsel filed a "Memo and Brief as To Modification of Contracts" in LT No. 14-99. This memorandum on modification, except for an introduction and conclusion, consists entirely of text from 17 AM.JUR.2D *Contracts* § 520 (1985). Nowhere, however,

The Mulitauaopeles admit that they have not paid rent under the lease. This failure is a material breach of the lease. They also breached the lease in other ways. The lease specifically states that they "shall not assign or sublet the leased premises or any part thereof for all or any part of the term of this lease without the written consent and approval of the Lessor." Nonetheless, the Mulitauaopeles allowed others to use the building for profit.[2] They allowed Recipe, their business though a separate legal entity, to use the premises in violation of the provision not to assign or sublet the premises without Tiumalu's consent. In addition, Recipe entered into an agreement with Lin Ta-Li and ShihKai Lin for the Lins to run Recipe. While the agreement is styled as a contract to hire managers, the Lins pay fees to Alamoana, indicating that the agreement is an assignment or sublease in violation of the Mulitauaopeles' lease with Tiumalu. There is no express evidence that Tiumalu permitted either Recipe or the Lins to occupy and use the premises.

## V. Remedies

### A. Eviction

■ Although defendants were not justified in failing to pay their rent, Tiumalu's failure to demand immediate payment of rent when defendants did not pay on their leases justifies their treating time of lease payments as not of the essence. *Hunkin*, 13 A.S.R.2d at 40 (immediate eviction denied *when payment not* required for several years). Immediate eviction on the ground of failure to pay rent is inappropriate in this case. However, there are other grounds on which Tiumalu is entitled to eviction.

---

does counsel cite American Jurisprudence. In doing so, counsel has plagiarized, passing off research and writing by the authors of American Jurisprudence as his own. He has also included all of the citations from the same part of American Jurisprudence. As these citations are quite lengthy and improperly cited, counsel has almost undoubtedly failed to read and verify these cases as supporting his position.

The conduct of attorneys is governed by the American Bar Association Model Rules of Professional Responsibility ("Model Rules"). H.C.R. 104. It is professional misconduct for a lawyer to engage in conduct involving dishonesty or misprepresentation. Model Rule 8.4(c). Failure to abide by the Model Rules constitutes grounds for discipline under H.C.R. 155.

[2] A lease between Recipe and Peacock Partners Pacifica Ltd., commencing September 11, 1988, appears to have been in place when the lease with Tiumalu became effective. It is unclear whether this sublease violated the Multitauaopeles' lease with Tiumalu since it predated the lease at issue.

■ Levi's lease began on June 1, 1997. The lease is listed as a three-year lease. It gives Levi the right to lease the premises for three years from June 1, 1997, but it also states that the term should be computed through January 1, 2000. It is therefore unclear whether the lease expired on January 1, 2000 or whether it will expire on May 31, 2000. However, determination of this issue is unnecessary because of the proximity of the present date to the later expiration date. As of June 1, 2000, Levi will no longer have permission to remain on the premises. We therefore grant Tiumalu's request for eviction, effective on June 1, 2000. Faleiva's three-year lease, which began on January 1, 1997, has expired. Faleiva does not have permission to remain on the premises and thus is not entitled to remain there. We therefore grant Tiumalu's request for eviction of Faleiva.

The Mulitauaopeles, as noted above, breached their lease by failing to obtain Tiumalu's written permission to assign or sublet the premises. We therefore grant Tiumalu's request for eviction of the Mulitauaopeles. Because the Mulitauaopeles no longer have a right to remain on the premises, Recipe, having no separate lease, also has no right to remain there.[3]

### B. Monetary Damages for Breach of Contract

■ Tiumalu also seeks monetary damages. She first seeks restitution as an equitable remedy based on unjust enrichment in the amount of the

---

[3] Other arguments by Tiumalu's counsel for Recipe's eviction are not well taken. Counsel asserts that Recipe is a trespasser on the premises, and that an order by the Court compelling discovery under T.C.R.C.P. 37 precludes any denial by the Mulitauaopeles and Recipe that Recipe came onto the premises by trespass. The Court's order of February 24, 2000 does not preclude such a denial, and specifically excluded Tiumalu's proposed ruling that facts alleged in her requested admissions are deemed admitted. Recipe is not a trespasser because it had permission from the Mulitauaopeles, as lessees, to occupy the premises.

Under Model Rule 3.3(a), every attorney has a duty of candor, including the duty not to knowingly make false statements of material fact to the court. By asserting that the Mulitatuaopeles and Recipe were precluded from denying that they were trespassers, counsel either failed to read and understand the Court's order or attempted to intentionally mislead the court. The Court cannot properly function unless attorneys make reasonably diligent inquiry into the truth of the facts they assert. The Court will not tolerate misstatements of its decisions.

We have not requested an investigation into this matter, pursuant to H.C.R. 158, but in light of the two possible violations noted in this Opinion and Order, we will not hesitate to do so if we see misconduct in the future.

rent defendants made by subleasing the property. Tiumalu has cited no compelling law in support of her claim for equitable damages under the facts of these cases, simple breaches of contract, and has not explained why compensatory damages are inadequate. The traditional remedy for breach of contract is compensatory damages, generally described as returning the parties to the position they would have held had a breach not occurred.

■ Good-faith improvers are entitled to reimbursement for their actual expenses in improving property or for the amount by which the improvements enhance the value of the property, whichever is less. *Lutu v. Semeatu*, 17 A.S.R.2d 18, 19 (land & Titles Div. 1990); *Tulisua v. Olo*, 8 A.S.R.2d 169, 172 (App. Div. 1988). When a landlord allows a tenant to improve property, as here, it would be inequitable for the owner to deny compensation while the owner receives the benefits. *See Fealofa'i v. Reid*, 14 A.S.R.2d 57, 60 (Trial Div. 1990).

There is little question that Tiumalu implicitly, if not expressly, agreed to the building improvements. Building improvements were necessary for Levi and the Mulitauaopeles to use the buildings for commercial purposes as contemplated in their leases. Furthermore, the location of the buildings and the fact that the improvements were made by the Tiumalu family members make it very likely that Tiumalu knew about the improvements and at least acquiesced to them. Tiumalu is therefore entitled to the rental payments owed by defendants, less the value of improvements made to the buildings.

The total rent owed by Levi through May 2000 is $7,000. Levi submitted evidence that he spent from $29,400 to $31,950 on improvements, which included $14,400 for night security during the work period. In any event, his expenditures on improvements substantially exceeded the rental amount due to Tiumalu. Levi, therefore, does not owe any rent to Tiumalu.

Tiumalu is entitled to the $1,000 monthly rent Faleiva agreed to pay for a term of three years beginning on January 1, 1997, plus rent for the months she has held over beyond the lease period. The amount owed through May 2000 totals $42,000. Faleiva did not present evidence on improvements, and Tiumalu is therefore entitled to recover $42,000 from her.

■ Tiumalu seeks monetary damages against the Mulitauaopeles in the amount of $1,500 monthly from December 1, 1988 to the present. However, the statute of limitations on contract actions is 10 years. A.S.C.A. § 43.0120. This action was filed on March 18, 1999. Rent due more than 10 years before this date is barred by the statute of limitations. Rent owing from March 18, 1989 through May 2000 totals $201,650.

The Mulitauaopeles calculated that they made improvements of $65,000 to $75,000 to the building structure and $25,000 to the building interior. While the Mulitauaopeles may have expended $90,000 to $100,000 in building improvements, we believe this amount is substantially overstated. We have no itemized list of expenses incurred by the Mulitauaopeles and little information from which to determine a reasonable amount. We must nonetheless make what we believe to be a fair estimate of the value of the improvements, and on this basis estimate this amount at $75,000. Tiumalu is therefore entitled to recover $126,650 from the Mulitauaopeles.

### Orders

1. Eviction is granted as to Levi, effective June 1, 2000.

2. Eviction is granted as to Faleiva, the Mulitauaopeles, and Recipe, effective immediately.

3. Damages are denied as to Levi.

4. Faleiva shall pay to Tiumalu damages in the amount of $42,000. This amount shall be payable in installments of $1,400 per month for 30 months, commencing with July 2000.

5. The Mulitauaopeles shall pay to Tiumalu damages in the amount of $126,650. This amount shall be payable in 60 monthly installments, commencing with July 2000. They shall pay 59 monthly installments of $2,111 and a final installment of $2,101 in the sixtieth month.

It is so ordered.